310 P.2d 830

William P. HAZARD, Petitioner,

v.

The SUPERIOR COURT of the State of Arizona, IN AND FOR the COUNTY OF PIMA, and Herbert F. Krucker, Presiding Judge thereof, Respondents,

and

Carl Shurtz, Real Party in Interest.
No. 6338.

Supreme Court of Arizona.
May 7, 1957.

May, Lesher & Dees, Tucson, for petitioner.

Scruggs & Rucker and E. J. Valeski, Tucson, for real party in interest.

UDALL, Chief Justice.

Petitioner, William P. Hazard, instituted this original proceeding in certiorari against respondents, the superior court of the State of Arizona, in and for the County of Pima, and Honorable Herbert F. Krucker, presiding judge thereof, for the purpose of testing the legality of an order that, in effect, dismissed petitioner's appeal from the action of the Board of Adjustment of Pima County Zoning District No. 1, in granting a permit to one Carl Shurtz for the operation of a "sand and gravel pit". Shurtz was permitted to intervene as a defendant in the superior court proceeding, and he appears in this court as the real party in interest. For convenience the applicant for the writ will be designated petitioner, the court and judge will be styled respondents, and Carl Shurtz will be called by his surname.

The procedural steps giving rise to the instant petition for certiorari may be briefly yet comprehensively stated as follows: 1. Shurtz is the owner of certain patented ground in Sec. 27, Twp. 13 South, Range 14 East, of the G. & S. R. B. & M., which lies in and adjacent to the Rillito Wash that is north of the city of Tucson, and since the year 1950 a sand and gravel pit had been operated thereon. On July 26, 1954, Shurtz filed an application for a permit to operate a sand and gravel pit on the premises which, under the zoning ordinances of Pima County, were closed to such use except by special, conditional permit. The application was denied by the Zoning Inspector because under section 2404 of the County Zoning Ordinance it required a special permit from the Board of Adjustment, District No. 1, of Pima County.

2. Shurtz then appealed to the Adjustment Board for such special permit, which was granted on August 12, 1954.

3. Certain persons affected appealed from the Board's action by filing a complaint on appeal in the Superior Court, naming the Board of Adjustment as defendant. Petitioner Hazard, a property owner in the area, was granted leave to intervene as a party plaintiff, and he thereafter filed a complaint in intervention which took the form of an appeal from the Board's action. The complaint also charged Shurtz with the maintenance of a public nuisance and sought injunctive relief on that basis. Shurtz was permitted to intervene, and he filed an answer to the Hazard complaint wherein, inter alia, it was alleged his activities in the area constituted "mining operations" that are specifically exempted from the provisions of the County Planning and Zoning Act of 1949, Sec. 16, Chap. 58, L.1949, now A.R.S. § 11–830, subd. A (2).

4. A pre-trial conference was held before the respondent judge at which counsel for all of the parties participated; it was there stipulated and agreed that there were three basic law questions to be submitted for determination before proceeding further or considering questions of fact that might thereafter be stipulated to. These questions were: (a) In the light of the zoning ordinances as adopted by the board of supervisors of Pima County, does the law authorize the granting of a sand or gravel pit in an S.R. (suburban ranch) zone at all? (b) Is a sand and gravel pit, such as is being operated by Shurtz, "mining" within the concept or purview of the zoning Act of 1949, supra? (c) Is this particular operation, as carried on by Shurtz, a sand and gravel pit as contemplated by the law or is it a rock crushing or a processing plant?

All parties were further agreed that the respondent judge might personally inspect the premises where these operations were being carried on as it was thought this would be more enlightening than any oral testimony. However, for the benefit of the reader, we submit a short description of the operations as testified to by Shurtz:

"We have a silent drag line—no motors—electric, that pulls this sand from 600-foot angle in this river up this ramp into a hopper—which feeds into this hopper, makes a right angle turn into this drum which washes this material with 150 gallons of water per minute. It goes over a screen which divides it into three different sizes. From there the coarsest goes into a crusher, it's crushed down to size and re-run over the belt back in to be graded into different bins. These belts take the material after the bins are full and takes them out and stockpiles them in piles to be used and hauled away."

Shurtz further stated, "We mine sand and gravel for public sale and for use in our (cement block) plant."

The questions of law involved were thoroughly briefed by counsel and the court thereafter, on September 7, 1955, entered an order, the pertinent parts of which read:

"The first question—namely, 'Does the law authorize the granting of a sand or gravel pit in an SR zone at all?'—need not be answered because the Court feels, and I think attorneys for both sides will agree, that the second question—that is, 'Is a sand and gravel pit mining?'—should be answered in the affirmative.

"With this answer to the second question—that is, 'The operation is mining'—then the operation of the sand and gravel pit in question is not subject to the zoning law at all and the proceeding before the Board of Adjustment is a nullity and of no effect.

"The third question need not be answered. This question is: 'Is the operation by Carl Shurtz a sand and gravel pit as contemplated by the law?' If it is a mining operation the zoning law does not apply to it.

"The next question—namely, 'Is it a processing plant?' and/or, 'Is it a rock crushing plant or something else?'—need not be decided because the Court feels from reading the cases that crushing, grinding or sorting are all parts of mining the sand or gravel

and incident thereto and, therefore, not subject to the zoning law."

After making these determinations the court concluded that the alleged maintenance of a public nuisance wherein injunctive relief and such damages as might be shown were sought, was the only issue remaining for trial. This issue was subsequently tried to the court, sitting with a jury; it found that the operations complained of did not constitute a public nuisance. In the judgment that was entered denying injunctive relief and damages to the plaintiffs the court's first finding was:

"1. That the sand and gravel extraction and processing operations of the defendant on the premises at 4300 East River Road are mining operations and thereby exempted from the operation of the zoning ordinances of Pima County."

This judgment is now before us on appeal in cause No. 6314. In determining this certiorari matter we are nowise concerned with the merits of that appeal; however, that court file is a part and parcel of the respondents' return to the certiorari writ.

The grounds stated in the petition, as a basis for issuing the writ of certiorari, are that:

(1) The respondent court, on the appeal then before it, neither affirmed nor reversed the action of the Board of Adjustment in granting Shurtz a special permit to operate·

a sand and gravel pit, that instead the court ruled as a matter of law that Shurtz' operations heretofore outlined are "mining" and therefore exempt under the statute from the operation and effect of the Pima County zoning ordinance.

(2) In dismissing petitioner's appeal from the action of the Board of Adjustment the court ruled that the action of said Board was a nullity and that, hence, the appeal therefrom was a nullity.

(3) Respondents erred as a matter of law in making the above rulings and, therefore, in ordering a dismissal of the appeal, it is contended the court exceeded its lawful jurisdiction.

(4) Finally it is asserted the respondents erred as a matter of law in ruling that Shurtz' operations are "mining" within the purview of the statute.

At the outset we are confronted with a motion filed by Shurtz to quash the writ of certiorari heretofore issued and to dismiss these proceedings. It challenges our jurisdiction to issue certiorari in this matter, the basis for such contention being that the respondent court had jurisdiction (a) of the parties to the action, (b) of the subject matter, and (c) to enter the particular orders, rulings and determinations of issues set forth in the preceding paragraph. It is urged that all such rulings were

" * * * made and entered in the course of the proceedings before said court, were within the jurisdiction of said court to make and enter and were within the scope of the issues made by the pleadings then before said court in said action and were orders, rulings and determinations which could be legally rendered on the issues shown by the record before the court at the time of the ruling * * *."

In that connection it is interesting to observe from the reporter's transcript that at the pre-trial hearing after the three questions, supra, had been stated by Attorney Scruggs, this occurred:

"Mr. Scruggs: '* * * Now, have I covered it or do you want to add anything?'

"Mr. Frey: 'I want to add this here: we also came to the understanding that all these parties were properly before the Court and that the Court did have jurisdiction to pass on this problem. Is that right?'

"Mr. Scruggs: 'That is correct.'

"Mr. Lesher: 'Yes.'"

We have concluded that the following is the primary question presented by the motion to quash or dismiss: May certiorari be used to test the correctness of the action of the respondent court in dismissing the appeal from the order of the Board of Adjustment?

Our statute, A.R.S. § 12-2001, provides that certiorari may be granted only

when the inferior tribunal has exceeded its jurisdiction and there is no appeal, nor, in the judgment of the court, any plain, speedy and adequate remedy. In the instant case the appeal statute, A.R.S. § 11–807, is silent as to any further review beyond the superior court in zoning matters. Thus, as the right of appeal exists only by force of statute, an appeal to this court would not lie; hence, this one requirement for certiorari is met. See, Him Poy Lim v. Duncan, 65 Ariz. 370, 371, 181 P.2d 357, and Duncan v. Truman, 74 Ariz. 328, 331, 248 P.2d 879. That leaves for determination only the narrow question as to whether the respondent court exceeded its jurisdiction in dismissing the appeal.

In the Truman case, supra, two pertinent pronouncements are made: (1) "by its very nature a writ of certiorari never issues to correct mere error committed by a lower tribunal * * *"; (2) "by definition jurisdiction is the power to hear and determine * * * irrespective of whether the case is decided rightly or wrongly" (74 Ariz. at page 331, 248 P.2d at page 882). Here petitioner contends that if the trial court were wrong in its determination that a sand and gravel pit processing plant was, under the statute, exempt from zoning, then it had no jurisdiction to enter the order of dismissal. In State ex rel. Andrews v. Superior Court of Maricopa County, 39 Ariz. 242, 245, 5 P.2d 192, we held that certiorari issues only to test jurisdiction and not to determine whether it was erroneously exercised. See also, Duncan v. Truman, supra.

From the pleadings—aside from the nuisance angle—it is apparent that the main issues before the respondent court were whether the Adjustment Board properly exercised its power in issuing Shurtz a permit to operate the sand and gravel pit, and, secondly, the basic question of whether such operations were by statute "mining" and, therefore, exempt from the zoning ordinance. By its order of September 7, 1955, supra, the court resolved both of these questions. Assuming, for the sake of argument, that the court incorrectly answered the basic question, that of itself would not deprive the court of jurisdiction as its power is not limited to making correct decisions.

We hold, on this record, the respondent court did have jurisdiction within the broad meaning of this term to do what it did and that it nowise acted in excess of its jurisdiction. This being true it is both unnecessary and improper for us in this certiorari proceeding to determine whether the trial court correctly resolved the "mining" question.

The writ of certiorari heretofore issued is ordered quashed.

WINDES, PHELPS, STRUCKMEYER and LA PRADE, JJ., concur.