400 P.2d 111

**STATE of Arizona, Appellee,**

**v.**

**Harry R. BROWN, Appellant.**

**No. 1347.**

Supreme Court of Arizona.

In Division.

March 17, 1965.

Darrell F. Smith, Atty. Gen., Robert W. Pickrell, former Atty. Gen., Norman E. Green, County Atty. of Pima County, and Arthur R. Buller, Deputy County Atty. of Pima County, Tucson, for appellee.

Cavness, DeRose & Senner, and Tom C. Foster, Phoenix, for appellant.

FRANCIS X. GORDON, Jr., Superior Court Judge.

The defendant, Harry R. Brown, was charged with commission of the crime of grand theft by false representations, a violation of §§ 13–661, 13–663 and 13–671, Arizona Revised Statutes. After a trial to the court, pursuant to waiver of jury by defendant, the court adjudged defendant guilty. From this judgment defendant appeals.

There will be set forth herein only those facts as are necessary for the decision. The defendant and one Joe Leigh established an insurance agency for Pioneer American Insurance Company and shared office space. Their business together was just getting started, although defendant had sold insurance before. In September, 1958, defendant borrowed $5,000.00 from the prosecuting witness, Mrs. Caroline S. Crane Dunn, whom he had known for many years. Most of the negotiations for this loan took place at defendant's office in Tucson, Arizona, in the presence of Mrs. Dunn's sister-in-law, Miss Lucy Crane. There is some dispute in the testimony as to whether these negotiations were all completed in one day, or occurred over a period of several days. However, after negotiation, the loan was made for a period of one year, with interest at the rate of ten per cent per annum.

A promissory note evidencing the debt was executed and delivered to Mrs. Dunn by defendant. Mrs. Dunn wanted some security, however, and the State's evidence was to the effect that defendant, prior to the time Mrs. Dunn gave him a check for the loan, made the following representations to Mrs. Dunn:

(A) That he would take out a life insurance policy for $5,000.00 on himself with Mrs. Dunn as beneficiary;

(B) Put up his contract with Pioneer American Insurance Company as collateral;

(C) Put up his office furniture as collateral;

(D) That the reason he needed the $5,000.00 was because of a business deal in which he and his partner, Joe Leigh, were interested;

(E) That he was buying the building in which his office was located from a Mrs. Simpson and showed Mrs. Dunn purported receipts to prove this; also, that he was buying the whole city block on which his office building was located and was going to erect apartments for the elderly there.

Mrs. Dunn testified she relied on these representations and would not have loaned the money had they not been made. Further, the State's case tended to show that defendant owned only a small part of the office furniture referred to (about $100.00 worth); that he was not buying the office building, but merely renting it; and that he was not buying the city block on which it was located.

Defendant, in his testimony, denied representing to Mrs. Dunn anything about purchasing the building or land comprising the city block. He admits the inclusion of the office furniture, but contends he owned most of it at the time. His version of the transaction summarized is that the furniture as collateral security was an afterthought on Mrs. Dunn's part, requested and given by him *after* she had given him the check but prior to his cashing it, and that her reliance was primarily upon her trust in him rather than collateral security.

The loan was not repaid when due. Mrs. Dunn testified she requested payment, but defendant contends he had no idea she was worried about her money until some three years after the due date he heard on television that criminal charges had been filed against him by Mrs. Dunn.

As his first assignment of error, defendant contends the trial court erred in limiting the scope of the cross-examination of the prosecuting witness as to her motive, bias and prejudice. The court sustained the county attorney's objections to questions by counsel for defendant which attempted to elicit from Mrs. Dunn whether she had the collection of the debt as her primary purpose in filing and prosecuting criminal charges against defendant. Although this alone might have been error, any prejudicial aspect thereof was removed, as the record shows from other answers of Mrs. Dunn and by statements of counsel that she obviously had a financial interest in filing crim-

inal charges against defendant. She filed a civil lawsuit against defendant *after* the filing of the criminal case. As to this action, defendant confessed judgment but still had not at the time of the criminal trial paid any portion of the debt. Further, the record as a whole discloses Mrs. Dunn's obvious prejudice against the defendant, and answers to the questions objected to could not, in our opinion, have made either of these points any clearer.

■■ The test of whether the error was prejudicial enough to require reversal is whether if the error had not been committed, it is probable that the verdict might have been different, State v. Polan, 78 Ariz. 253, 278 P.2d 432. We doubt that allowing these questions to be answered would have caused the court, sitting without a jury, to have reached a different conclusion, as they would merely have repeated matters before the court in other items of testimony. If any other reasons for pursuing this line of questioning existed, such were not shown by any offer of proof by defense counsel.

As his second assignment of error defendant contends that the prosecution was guilty of misconduct which was prejudicial to the defendant by suppressing material evidence.

The record is clear that in an attempt to provide Mrs. Dunn with the life insurance collateral required in representation (A), supra, defendant made application for a $5,000.00 term life insurance policy on his life but did not complete the requirements necessary for the issuance of the policy. He had in effect at that time a $100,000.00 Lloyds of London accidental death policy on his life, and he and his wife executed an assignment of $5,000.00 of the proceeds of it to Mrs. Dunn should he die of accidental causes. This written assignment was delivered to Mrs. Dunn. Defendant claims that the county attorney should have disclosed it to defense counsel, as it tended to show defendant's good faith. In not producing the assignment itself, or mentioning that it was in his possession, defendant claims the county attorney suppressed material evidence.

■ This assignment is without merit as counsel for defense himself brought out the existence of this document, its terms and the details of its execution and delivery to Mrs. Dunn in his direct examination of defendant. Defense counsel did not in any manner indicate that in addition thereto he was interested in locating the document itself, as he did not ask as to its whereabouts or for its production from either the county attorney or Mrs. Dunn when she testified. The existence and terms of the assignment were in evidence, if not the actual document itself.

For his third assignment of error defendant claims that the representations by the defendant were not material and the injured party did not rely on such representations. This Court stated in Maseeh v. State, 46 Ariz. 94, 47 P.2d 423, that in order for a person to be convicted of the crime of obtaining money by false pretenses, the false pretenses must have been of an existing or past fact, and the person parting with his money must have relied on the false representation in doing so.

■■ The record, taken as a whole and resolving any conflicts in the evidence in favor of sustaining the judgment of the court below, would have allowed the trial court to reasonably find that representations (D) and (E), supra, were false, made prior to the loan, and were relied upon by Mrs. Dunn in parting with her money. Further, the court could have found that there was a false representation made by defendant as to the amount of office furniture he owned in representation (C), supra. If a victim intends that a loan be unsecured, misrepresentations of security are immaterial; but if it is intended that there be some security, then misrepresentations by a defendant are highly criminal and material, People v. Ashley, 42 Cal.2d 246, 267 P.2d 271.

■ Moreover, a victim need not have relied exclusively on the false representations. It is enough if a fraudulent representation is a decisive, though not the sole, influence operating upon the mind of the person to induce the giving up of money. Other statements or considerations *not* amounting to false pretenses may cooperate to that result without impairing the force of the criminal act. Commonwealth v. Greenberg, 339 Mass. 557, 160 N.E.2d 181; People v. Phillips, 186 Cal.App.2d 231, 8 Cal.Rptr. 830; People v. Ashley, supra. It is sufficient if victim relied upon one or more false representations.

■ Whether this Court would have reached the same conclusions on the evidence as the lower court is immaterial. On appeal from a judgment of guilty, the reviewing court must view the evidence in the strongest light in favor of the State, State v. White, 97 Ariz. 196, 398 P.2d 903. We are not concerned with mere conflicts of evidence if the judgment is supported by substantial evidence. State v. Rivera, 94 Ariz. 45, 381 P.2d 584. The evidence before the court below, although greatly in conflict on some issues, was substantial and would fulfill this test.

■ Defendant's fourth assignment of error is that the trial court erred in denying his motion for dismissal and for new trial because the information did not state

a public offense in that it did not show a connection between the payment of the money and the representations by direct allegation. We consider this assignment to be without merit as the wording of the information is sufficient under subsections A (2,) and B, Rule 115, Rules of Criminal Procedure, 17 A.R.S. Moreover, the objection must be raised by a motion to quash the information under Rules 168 and 169, Rules of Criminal Procedure, supra, rather than by a motion to dismiss.

Defendant's fifth assignment of error was that the court erred in denying defendant's motion for a new trial in that the finding was contrary to the weight of this evidence. He does not point out in support of this assignment in what manner the court erred nor in what manner he feels that the finding was contrary to the weight of the evidence. Further, defendant makes no citations of authority and does not argue the matters in his brief. Therefore, the assignment will be considered as abandoned. Brockmueller v. State, 86 Ariz. 82, 340 P. 2d 992.

It is ordered that the judgment of the trial court be affirmed.

STRUCKMEYER, V. C. J., and UDALL, J., concurring.