502 P.2d 1334

**STATE of Arizona, Appellee,**

v.

**L. J. GAY, Appellant.**

**No. 2391.**

Supreme Court of Arizona, In Banc.

Nov. 20, 1972.

Rehearing Denied Dec. 19, 1972.

**516**

Gary K. Nelson, Atty. Gen., Phoenix, by John S. O'Dowd, Tucson, and William P. Dixon, Asst. Attys. Gen., Phoenix, for appellee.

Howard A. Kashman, Former Pima County Public Defender, Edward Bolding, Pima County Public Defender, by Albert G. Freeman and Eleanor Daru Schorr, Deputy Public Defenders, Tucson, for appellant.

HAYS, Chief Justice.

This case is before us on an appeal from a verdict and judgment of guilty on two counts of kidnapping while armed with a gun. The defendant, L. J. Gay, was sentenced to not less than five nor more than six years on each count, the two sentences to run concurrently.

Major Gordon ("Major" is his first name, not an army rank) on February 8, 1971, took a day off of work and spent the latter part of it bar-hopping in Tucson, drinking beer. There is no evidence that he was intoxicated at any time material hereto. He left one bar to go to the V.F.W. at about 7:30 P.M. At each place he had "a couple of beers." Vera Phillips was also at the V.F.W. He does not remember talking with her, but according to her testimony she was at the V.F.W. a couple of hours and had "about three cans of Budweiser." She knew a lot of people there and stopped to chat with a number of them. She said that she talked with Gordon there and had known him as an acquaintance for about a year or two. Since each was married, it is not surprising that each tried to minimize their previous contacts, and Gordon said that he had not known her before the night in question. From the V.F.W. they both went to a "tough" place called South Park Inn. They went in separate cars and claim that it was not by prior arrangement. There they "socialized" for a time, after which they proceeded in Gordon's car to Pop's Place to get a snack. She ordered a bowl of chile. Shortly before they decided to leave, the defendant persuaded Gordon to take him across town

for $10. Defendant insisted on paying for Mrs. Phillips's chile, flashing "a wad of bills." Gordon also noticed that defendant carried a pistol in his belt, but that seems not to have deterred him from taking defendant as a passenger.

According to the testimony of Gordon and Mrs. Phillips, defendant got in the back seat and Gordon drove his car while Mrs. Phillips sat beside him. Almost immediately, defendant demanded that Gordon drive him to Phoenix, enforcing the demand with the statement that he had a gun pointed at them. He refused to be talked out of the idea, so they got on the freeway and drove toward Phoenix. On the way, he had Gordon stop the car, forced the lady to get in the back seat with him, and attempted to rape her. He managed to remove her underpants, but she struggled very hard, despite the gun, and foiled the rape attempt. In the struggle, she got hold of the gun as they fell out the open door. Defendant fell on top of her and started pistol-whipping her. She asked Gordon to help, and he came around the car and kicked defendant in the face. In the melee, she escaped and ran away. Defendant then forced Gordon to continue to drive and ordered him to stop again. Meanwhile, he beat Gordon on the back of the head. Defendant got out to "urinate or something," and Gordon drove off without him.

The last stop was near Eloy, where Mrs. Phillips turned up badly battered and told her story to the police. By 5:00 A.M. defendant reported to the Eloy police, where he told them Gordon and Mrs. Phillips had picked him up in Tucson, had taken him in Gordon's car, and had attempted to rob him. He showed signs of having been in a fight. Meanwhile, Gordon vainly searched the highway for Mrs. Phillips and finally drove to his home in Tucson. His wife told him to call the police and they came out to investigate. Later that day, the police brought Gay and Mrs. Phillips back to Tucson.

There were several inconsistencies in Gordon's story and conflicts between his story and that of Mrs. Phillips. For example, at one point he testified that he had agreed to drive defendant to Phoenix. In view of the long interrogation on the stand and everything else which he said, that could well be interpreted as a slip-of-the-tongue, but it was not corrected. Gordon returned her underpants which he said he did not find in the car, but she said that he had told her that that was where he had found them. He said he had never met her before that night, while she said she had known and talked with him for a year or two, although she did not know his name. He says that defendant made him stop the car twice before the stop for the attempted rape, while she says there were no prior stops. There are other conflicts in the testimony.

Defendant contends that the conflicts were so flagrant and so numerous that the judge should have directed a verdict in his favor. He cites Commonwealth v. Bartell, 184 Pa.Super. 528, 136 A.2d 166; Commonwealth v. Rex, 147 Pa.Super. 121, 24 A.2d 98; Thigpen v. State, 462 P.2d 270 (Okl.Cr.); and Carrier v. Commonwealth, 356 S.W.2d 752 (Ky.). These cases of course have facts that differ from the instant case. *Bartell, supra,* says that where the facts are so "contradictory on the essential issues that any finding by the jury would be a mere guess," the case should not be allowed to go to the jury. We do not find such to be the case here. Conflicts in the evidence are for the jury to resolve, and after they have been resolved by a verdict we will not upset them if there is substantial evidence in support of the conviction. State v. Thompson, 101 Ariz. 38, 415 P.2d 566. Furthermore, on appeal we view the facts in a light most strongly in favor of upholding the verdict. *Ibid.* Rarely does a case reach us where there are not some conflicts and contradictions. The instant case has its share, but they are not on vital points. Mrs. Phillips,

at the time she was called to the stand, was on the verge of hysteria. She refused to testify concerning her experience until the trial court threatened her with contempt and a jail sentence. Even under ordinary conditions, different persons will show differences in their testimony due to faulty memory, faulty observation and other factors.

■ Defendant's second contention is that the court erred in refusing to give a requested instruction to the effect that a guilty verdict cannot stand on mere suspicion, probabilities or supposition. The court, however, did instruct the jury that it should not convict the defendant on mere suspicion or conjecture. We do not feel that the omission of the word "probability" is reversible error. There is more than one way to define reasonable doubt. Viewing the instructions as a whole, they appear to have been adequate.

■ Defendant's last argument is that the prosecution used improper argument to the jury. The State called Gordon, but did not call Mrs. Phillips. In order to show the contradictions which it contends require a reversal, the defense called her. The closing argument of the defense was not reported. In the prosecution's rebuttal, the County Attorney stated to the jury that Mrs. Phillips had been seen by the prosecutor on several occasions. Defense counsel objected that this was arguing from matter not in the record and got an equivocal ruling. The prosecutor then went on to argue to the jury that:

"At any rate you saw the woman. She was emotional and she had physical injuries. She was in pain here today. That is why she didn't want to testify and I was not going to bring her in here and put her through this again. That is why I didn't have Vera Phillips here."

There is no question but that the latter part of this statement, in which the prosecutor told why he didn't call her, was improper. We cannot justify it as invited error since we do not have the defense's closing argument. Defendant contends that

the statement was made to engender the passion and prejudice of the jury. There is nothing in the record to show that such was the prosecutor's purpose, or that the statements had that effect. In any event, the complete answer is that the defense made no objection to the statement, no request to instruct the jury to disregard it, and no request for a mistrial, so that he has no standing in this court to complain of that particular error.

The judgment of the Superior Court is affirmed.

CAMERON, V. C. J., and STRUCK-MEYER, LOCKWOOD and HOLOHAN, JJ., concur.