509 P.2d 1034

The STATE of Arizona, Appellee,

v.

Howard S. BYRD, Appellant.

No. 2409.

Supreme Court of Arizona, In Banc.

May 22, 1973.

Gary K. Nelson, Atty. Gen., by Thomas A. Jacobs, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, by William C. Blakley, Former Deputy Public Defender, Phoenix, for appellant.

CAMERON, Vice Chief Justice.

This is a delayed appeal from a jury verdict and judgment of guilt to the crime of robbery, § 13–641 A.R.S., and a sentence of not less than six nor more than eight years in the Arizona State Prison after revocation of probation initially allowed by the court.

We are called upon to answer two questions on appeal:

1. Did the trial court commit reversible error in denying defendant's motion for a mistrial after a police officer testified that the defendant had been previously arrested for "various crimes"?

2. Did the trial court commit reversible error in denying defendant's motion for a directed verdict?

The facts necessary for a determination of this matter on appeal are as follows. On 3 August 1969, the victim in this case

was arrested by an officer of the Arizona Highway Patrol for driving while under the influence and for an expired driver's license. The Phoenix City Police Department was called to pick up the victim for transportation to the Phoenix City jail. When the Phoenix city police wagon arrived at the highway patrol yard there was one person already in the wagon. On the way from highway patrol yard to the jail, three other persons (who were handcuffed), including the defendant, were picked up and placed in the wagon. Once in the wagon the three started to search the drunk driving suspect, took his money, and split it up between them. The testimony of the first prisoner indicated that they took the victim's money, the papers he had in his wallet, threw the wallet on the floor, and divided the money between them. The victim testified:

"A   Well, I sat down and sort of mulling over my own misadventures, and one guy setting next to me told me not to cause any trouble, just be quiet, and don't do anything, and wanted me to stand up, and wanted my wallet. And if I didn't do what he told me, why they'd get me in the tank.

"Q   Now, did you—what else occurred?

"A   And the other two colored guys went along, said the same thing, and they told—the one that was sitting next to the Mexican fellow, told him he better keep his mouth shut and mind his own business.

"Q   And what occurred, sir?

"A   Well, they got my wallet and went through all of it and dumped everything out, and told me to put it back in, put all the stuff back in there, and just keep my trap shut.

"Q   Now, did you see what was done with the money?

"A   Yes. The one next to me took the money and split it between them.

"Q   And then what happened to the money?

"A   Well, when we got uptown, they didn't do anything to me, but—

"Q   No. What—you say the money was split up.

"A   Yes.

"Q   Okay. Now, what did—did you see them do anything with the money, the three Negro gentlemen?

"A   Well, they put it in their pockets."
The victim also testified that that evening he had approximately $130 when he went to a local tavern. When the three suspects were booked into the jail they had, respectively: Byrd, $67.34; Brooks, $59.65; and Hogue, $48.52.

Two of the defendants were tried together. Neither took the stand or offered any testimony. Both were found guilty by the jury. The defendant Byrd was placed on probation and imposition of sentence suspended. He violated the terms of his probation and was sentenced to from six to eight years in the Arizona State Prison. This court granted his motion for delayed appeal.

## PREVIOUS ARRESTS FOR "VARIOUS CRIMES"

A police officer for the City of Phoenix testified as follows:

"A   We started towards the main station to bring him in, and we received another call before we got there.

"Q   And what did you do then?

"A   Our call was to 36th Street and Washington, where we were supposed to make a wagon for some of our police officers this time.

"Q   And what occurred there?

"A   We arrived at 36th Street and Washington a little after getting the call, and there were numerous other police officers, some in uniform and some in plain clothes.

"Q   How many, sir?

"A   I don't know.

"Q And what occurred while you were there?

"A We learned that there were three subjects arrested for various crimes, and we were to take them to jail, also."

Defendants moved for a mistrial at this time which was denied.

The defendant contends that by this testimony there is an inference that the defendant and his two companions were guilty of other offenses or crimes. Defendant further contends that since the defendant did not take the stand in his own behalf and his credibility was therefore not an issue, the testimony was especially prejudicial.

In the instant case, the defendants were in the police wagon with the victim and it was necessary to know this fact in order for the jury to have a complete story of the nature of the crime itself. State v. Hutton, 109 Ariz. 356, 509 P.2d 626 (1973); State v. Villavicencio, 95 Ariz. 199, 388 P.2d 245 (1964); State v. Albe, 10 Ariz. App. 545, 460 P.2d 651 (1969). Knowing that the three defendants were in the police wagon, handcuffed together, the jury could certainly infer that the defendant had done something of a criminal nature to merit this treatment. The statement of the officer was relevant to the issue before the jury and was hardly prejudicial to the defendant.

"And yet, it has been recognized time and again by our Supreme Court that there are occasions when conduct of the defendant at other times than during the commission of the crime with which he is charged has direct probative value, and, when such is the case, the admission of such evidence is proper even though such conduct might be criminal in nature. (citations omitted)

"We believe the fundamental test laid down by our Supreme Court is that of relevancy. The question in each case is whether the proffered evidence has a direct probative bearing upon an issue on trial. * * *" State v. Hernandez,

7 Ariz.App. 200, 202, 437 P.2d 952, 954 (1968).

## DENIAL OF DEFENDANT'S MOTION FOR DIRECTED VERDICT

A motion for a directed verdict questions the sufficiency of the evidence, State v. Milton, 15 Ariz.App. 392, 489 P.2d 55 (1971), and where the trial judge has a conscientious conviction that all the elements of the offense have not been established beyond a reasonable doubt, he has a duty to direct a verdict of acquittal. State v. Schantz, 98 Ariz. 200, 403 P.2d 521 (1965).

Defendant contends that the State did not establish beyond a reasonable doubt that the defendant had committed any crime. With this we do not agree. A review of the testimony reveals that the three people handcuffed together took the money from the victim and divided the money between them. The victim testified that he was afraid of bodily harm. The testimony of the first passenger in the paddy wagon was as follows:

"MR. DAIRMAN: * * * Now, did you observe anything that occurred—anything unusual that occurred in that paddy wagon?

"A Well, they started to search this white guy.

"Q Who did?

"A Well, the three colored guys.

"Q The three colored guys started to search the white guy?

* * * * * *

"Q MR. DAIRMAN: In what way was he searched?

"A They looked through his pockets.

"Q What pockets?

"A Well, his pants pockets.

"Q And any other pockets?

"A And then they looked through his shirt pocket.

"Q And what pockets on his pants?

"A Well, they searched through all four of them.

"Q And what did you observe after this, sir?

"A Well, then they looked in his shirt pocket and got the money he had there.

"Q What did they do with the money?

"A Well, they split it.

"Q And how did they do this?

"A Well, they each took a share of it.

\* \* \* \* \* \*

"Q And do you recall which one was sitting next to him?

"A I think it was this other gentleman over here.

"Q The gentleman in the yellow shirt?

"A Yes.

"Q MR. DAIRMAN: May the record reflect the witness has identified the defendant Mr. Byrd?

"THE COURT: So noted."

We believe the record reveals sufficient evidence to submit the case to the jury and to support the jury's verdict. See State v. Green, 103 Ariz. 211, 439 P.2d 483 (1968).

Judgment affirmed.

HAYS, C. J., and STRUCKMEYER, LOCKWOOD and HOLOHAN, JJ., concur.