624 P.2d 1264

STATE of Arizona, ex rel. Charles F. HYDER, Maricopa County Attorney, Petitioner,

v.

The SUPERIOR COURT of the State of Arizona, IN AND FOR the COUNTY OF MARICOPA, the Honorable Frederic Heineman and Mickey L. Clifton, Real Party in Interest, Respondents.

No. 14893–PR.

Supreme Court of Arizona, In Banc.

Jan. 15, 1981.

Tom Collins, Maricopa County Atty., Charles F. Hyder, Former Maricopa County Atty., Ronald W. Collett, Deputy County Atty., Phoenix, for petitioner.

Eldridge & Brown, P. A. by Patrick E. Eldridge, Phoenix, for respondents.

GORDON, Justice:

Mickey L. Clifton was charged by indictment in Maricopa County Superior Court on December 12, 1978, with two counts of grand theft by false representations and one count of attempted grand theft by false representations in violation of A.R.S. §§ 13–661, 663, 671(A), 1647, 108, 109 and 110.[1] During trial in July of 1979, defendant Clifton moved for judgment of acquittal as to all counts, as allowed by Rule 20(a), Rules of Criminal Procedure, 17 A.R.S., both at the close of the state's case and at the close of all the evidence. The trial judge denied these motions and submitted the case to the jury which returned a guilty verdict as to Count I of grand theft and verdicts of acquittal as to the other two counts. The defendant then renewed his motion as to Count I, pursuant to Rule

---

1. The charges were brought for violations which occurred prior to revision of the Criminal Code, effective October 1, 1978.

20(b), Rules of Criminal Procedure, 17 A.R.S., arguing that there was no substantial evidence to warrant a conviction. The trial court granted the motion, set aside the jury verdict of guilty and ordered entry of judgment of acquittal.

The state filed a petition for special action in Division One of the Court of Appeals arguing that the trial judge had abused his discretion by granting the judgment of acquittal. The state also contended, as a basis for special action jurisdiction, that it had no equally plain, speedy, and adequate remedy by appeal because a judgment of acquittal after a jury verdict is nonappealable.[2] Concluding that review by special action was appropriate, the Court of Appeals accepted jurisdiction, holding that the trial judge's order was not appealable by the state,[3] and determined that the trial judge had abused his discretion. *State ex rel. Hyder v. Superior Court,* 128 Ariz. 241, 624 P.2d 1289 (App.1980).

This petition for review was filed upon denial of a petition for rehearing in the Court of Appeals. Taking jurisdiction pursuant to A.R.S. § 12–120.24, Rule 23, Rules of Civil Appellate Procedure, 17A A.R.S., and Rule 8(b), Rules of Procedure for Special Actions, 17A A.R.S., we vacate the opinion of the Court of Appeals and order reinstatement of the jury verdict of guilt.

The facts necessary to our determination are as follows: On August 16, 1977, Clifton was notified by the Board of Governors of the State Bar of its recommendation that he be suspended from practice for 30 days and that he had 10 days to file objections. The notice stated further that failure to object would constitute acceptance of the suspension and that the Board's recommen-

dations would be filed with this Court. Clifton filed no objections and testified that on or about August 27, 1977, he voluntarily suspended his practice. On August 28, one Steven Pritchard was arrested and apparently within a few days hired Clifton to represent him. On September 8, Clifton received a $500.00 retainer from Pritchard's mother.

The next day, the State Bar notified Clifton that because he had filed no objections to its recommendation, the Board of Governors would request this Court to suspend him. On September 13, Clifton informed the Staff Bar counsel, Mr. Lawrence Mattice, that he had thought the suspension would be automatic if he did not contest the recommendation, that he had suspended operations in his office at the end of August, and that he would inform this Court of his voluntary suspension. Mr. Mattice replied that he would include that information in the State Bar's recommendations to this Court and requested that Clifton send him copies of the letters he had sent to clients informing them of his suspension as required by 17A A.R.S. Sup.Ct. Rules, Rule 37(h).[4] Clifton testified that it was only at this time that he learned that his subsequent reinstatement would not be automatic.

On September 16, Pritchard met Clifton in Tucson to pay him another portion of the retainer. Pritchard testified that at that meeting Clifton informed him that Pritchard's preliminary hearing, scheduled for the next day, had been postponed. In fact it had not, and Pritchard also testified that Clifton never performed any legal services for him. There was conflicting testimony as to whether or not Clifton had arranged

---

**2.** Rule 1 of the Rules of Procedure for Special Actions, 17A A.R.S., provides that "Except as authorized by statute, the special action shall not be available where there is an equally plain, speedy, and adequate remedy by appeal * *."

**3.** The Court of Appeals founded its conclusion purely on an examination of A.R.S. § 13–4032 governing the right of the state to appeal asking whether the statute applied to an appeal of a post-verdict order entering a judgment of

acquittal. That court itself has previously held that the state is not authorized to appeal from a judgment of acquittal, *State v. Hunt,* 8 Ariz. App. 514, 447 P.2d 896 (1968), and we have recently reiterated that principle. *Rolph v. City Court of the City of Mesa,* 127 Ariz. 155, 618 P.2d 1081 (1980).

**4.** Mr. Mattice testified at trial that the State Bar's files did not include a copy of such a letter to Steven Pritchard.

substitute counsel for Pritchard: Clifton testified he had asked an attorney Weihn to take the case; Weihn stated that Clifton had contacted him to handle the preliminary hearing but that Pritchard never went to see him; Pritchard testified that Clifton never told him anything about substitute counsel. There was also conflicting testimony regarding whether Clifton had informed Pritchard at the September 16th meeting of the suspension.

On September 23, Clifton's attorney notified this Court of Clifton's voluntary suspension and requested that we make the suspension retroactive to August 27. On October 4, Mr. Mattice wrote Clifton's attorney informing him of the telephone conversation with Clifton on September 13 and that Clifton had not yet sent him the copies of letters to clients regarding the suspension. The following day, October 5, we issued the order of suspension for 30 days, effective August 27, and assessing costs to be paid to the State Bar before application for reinstatement. On October 11, Clifton again received money from Pritchard. As a result of another charge of professional misconduct, Clifton was subsequently suspended indefinitely from practice, and no monies have been returned to his clients.

Clifton maintained at trial that he agreed to represent Pritchard at a time when he was still in good standing with the State Bar and that he intended to have continued any proceedings that might arise during his voluntary suspension. This, together with arrangements he said he made with attorney Weihn, would enable him to resume work for Pritchard at the termination of the suspension. He specifically denied taking money from Pritchard with the intent to do no work for him.

Clifton argues that reversal of the trial court's order violates the double jeopardy clauses of the United States and Arizona Constitutions. He also contended below that although the state had no right to appeal, a reviewing court should not automatically assume thereby that review by special action would be appropriate. He argued further that the Court of Appeals had erroneously concluded that there had been substantial evidence to support the jury verdict.

■ Before answering Clifton's specific contentions, we address a technical difficulty in the appeal statute concerning subsection 3 brought to our attention in the proceedings below. We do not, however, dispute and Clifton does not challenge the holding of the Court of Appeals that the state was unable to appeal the judgment of the trial court.

The state's right to appeal is governed by A.R.S. § 13–4032 which provides as follows:

"An appeal may be taken by the state from:

"1. An order quashing an indictment or information or count thereof.

"2. An order granting a new trial.

"3. An order arresting judgment.

"4. A ruling on a question of law adverse to the state when the defendant was convicted and appeals from the judgment.

"5. An order made after judgment affecting the substantial rights of the state.

"6. The sentence on the grounds that it is illegal, or if the sentence imposed is other than the presumptive sentence authorized by § 13–604 or § 13–701.

"7. An order granting a motion to suppress the use of evidence." (Amended 1980.)

We agree with the Court of Appeals that the only sections arguably in favor of the state's ability to appeal in this case are subsections 3 and 5. The question, however, is whether the state can appeal an "order arresting judgment" as provided in subsection 3, given rules modifications by this Court abolishing the motion to arrest judgment.

The Rules of Criminal Procedure in effect prior to the current rules provided for the motion in arrest of judgment, 17 A.R.S., Rules of Criminal Procedure, Rule 315 et seq. (1956), which could be appealed, if granted or denied, pursuant to subsection 3 of the above appeal statute. In 1973, this Court revised the Rules of Criminal Proce-

dure pursuant to the authority granted by the Arizona Constitution. A.R.S.Const. Art. 6, § 5(5); *see State v. Blazak*, 105 Ariz. 216, 462 P.2d 84 (1969); *Arizona Podiatry Ass'n v. Director of Insurance*, 101 Ariz. 544, 422 P.2d 108 (1966). The revision added the Rule 24.2 motion to vacate judgment to replace the use in criminal proceedings of Rule 60(c), Rules of Civil Procedure, 16 A.R.S. *See* 17 A.R.S., Rules of Criminal Procedure, Rule 24.2, comment. At the same time we abolished the motion in arrest of judgment as a procedural device. *State v. Allen*, 27 Ariz.App. 577, 557 P.2d 176 (1976); Rule 24.2, comment, *supra*. The right to appeal an order granting the motion has not, however, been deleted from § 13–4032 by the Legislature.

▮ The issue becomes, then, whether the abolition of the motion in arrest of judgment, which deprives the state of the ability to appeal a trial court order granting such a motion, has improperly diminished the substantive right of the state to appeal. *State v. Birmingham*, 95 Ariz. 310, 390 P.2d 103 (1964); *Matter of Maricopa County, Juv.Act. No. JS–834*, 26 Ariz.App. 485, 549 P.2d 580 (1976). Such is not the case for the following two reasons:

First, the motion to vacate judgment encompasses the grounds of a motion in arrest of judgment. Both motions include as grounds a court's lack of jurisdiction. Rule 24.2 *supra*, (a)(1); 17 A.R.S., Rules of Criminal Procedure, Rule 316(A)(2) (1956). The remaining grounds for the motion in arrest of judgment related to the insufficiency of the indictment or information and to an insufficient correlation between the verdict and the charges in the indictment or information. Rule 316, *supra*, (A)(1), (3) and (4). Although the motion to vacate judgment does not refer to the indictment or information, it does provide in subsection (a)(3) that a conviction obtained in violation of the United States or Arizona Constitution may be vacated upon motion. Rule 24.2 *supra*, (a)(3). This ground clearly encompasses the indictment-related grounds of the former Rule 316 because a conviction founded upon an insufficient indictment or a conviction insufficiently related to the indictment would violate both the United States and Arizona Constitutions' provisions that the accused be informed of the nature and cause of the accusation. U.S.Const. amend. VI; A.R.S.Const. Art. 2, § 24; *see Palmer v. State*, 99 Ariz. 93, 407 P.2d 64 (1965); *State v. Mallory*, 19 Ariz.App. 15, 504 P.2d 556 (1973); *cf. State v. Chee*, 74 Ariz. 402, 250 P.2d 985 (1952).

Second, the Court of Appeals has expressly held that rulings on motions to vacate judgment are appealable pursuant to subsection 5 of the statute permitting appeals by the state. *State v. Wynn*, 114 Ariz. 561, 562 P.2d 734 (App.1977).[5] Thus, the state has not been deprived of a substantial right to appeal.

We therefore hold, in answer to the concern of the court below regarding the technical status of subsection 3 of A.R.S. § 13–4032, that it is of no further effect. We have previously stated that "statutory rules accompanying newly created rights will be deemed to be rules of court until specifically modified or suspended by rules promulgated on the authority of Article 6, § 5 of the Constitution." *State ex rel. Purcell v. Superior Court*, 107 Ariz. 224, 227, 485 P.2d 549, 552 (1971). *See also, Blazak, supra; Arizona Podiatry Ass'n, supra; Juv. Act. No. JS–834, supra.*

We now turn to a discussion of Clifton's contentions. He argues first that reversal of the trial court's judgment of acquittal would place him twice in jeopardy thus violating the United States and Arizona Constitutions. We find no merit to this argument in these circumstances.

---

**5.** The question arises whether the state should have moved to vacate the trial judge's post-verdict judgment of acquittal and then appealed a denial of the motion thus rendering special action jurisdiction unavailable. That avenue would not have been open to the state because the motion to vacate judgment is a defense motion, as is indicated by an examination of its grounds, the comments following, and Rule 32.1 and comments, Rules of Criminal Procedure, 17 A.R.S.

The Fifth Amendment to the United States Constitution provides that "[n]o person shall * * * be subject for the same offense to be twice put in jeopardy of life or limb * * *." U.S.Const. amend. V. This provision has been made applicable to the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). The Arizona Constitution, however, supplies the same protection for criminal defendants. A.R.S. Const. Art. 2, § 10.

■ The United States Supreme Court has held that "[t]he constitutional protection against double jeopardy unequivocally prohibits a second trial following an acquittal." *Arizona v. Washington*, 434 U.S. 497, 503, 98 S.Ct. 824, 829, 54 L.Ed.2d 717, 726 (1978). Where, however, successful appeal by the government would be followed merely by reinstatement of the jury's guilty verdict, double jeopardy principles would not be offended. *United States v. Wilson*, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975); *see Sanabria v. United States*, 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978); *United States v. Varkonyi*, 611 F.2d 84 (5th Cir. 1980), *cert. denied*, 446 U.S. 945, 100 S.Ct. 2173, 64 L.Ed.2d 801 (1980). To reinstate the jury's verdict would require no further fact-finding from the original jury and would not subject the defendant "to a second trial before a second trier of fact." *Wilson, supra*, 420 U.S. at 345, 95 S.Ct. at 1023, 43 L.Ed.2d at 243.

Clifton has asked us to consider an earlier decision of the United States Supreme Court, *United States v. Sisson*, 399 U.S. 267, 90 S.Ct. 2117, 26 L.Ed.2d 608 (1970). In that case, the United States District Court of Massachusetts held, after a guilty verdict, that Sisson could not be criminally convicted for refusing induction into the military and characterized its decision as an arrest of judgment. *Sisson, supra*. On appeal by the government, the Supreme Court held instead that the District Court's order was a directed verdict of acquittal because it depended on facts developed at trial; as such, it was not appealable by the government. *Sisson, supra*.

Although *Sisson* lends strength to petitioner's argument, the case was decided pursuant to the pre–1971 version of the federal Criminal Appeals Act which provided a complex delineation of appropriate circumstances for appeal by the government. *See* Criminal Appeals Act, Pub.L.No.90–351, Title VIII, § 1301, 82 Stat. 237 (1968) (amended 1971). When the Act was amended, it provided *inter alia*, that an appeal by the government of an order dismissing an indictment or information would be proscribed "where the double jeopardy clause of the United States Constitution prohibits further prosecution." 18 U.S.C. § 3731 (1976). *Wilson* and *Sanabria* make clear that double jeopardy is not offended where no further fact finding is required.

■ We find additional support for this position in decisions in this Court and in the Court of Appeals. In *State v. Bollander*, 112 Ariz. 35, 537 P.2d 22 (1975) we had occasion to examine double jeopardy principles and stated that:

"There are four basic situations where the guarantee against double jeopardy applies: (1) where an individual is tried and convicted of a crime and it is sought to prosecute him again for the same or an included offense; (2) where a person has been convicted and sentenced and an attempt is then made to increase the sentence; (3) where a person has been acquitted after a trial on the merits and an endeavor is made to prosecute him again for the same or an included offense (citation omitted); and (4) where an individual has been put in jeopardy by being placed on trial but after trial commenced a mistrial was ordered by the court and an endeavor is made to try the accused again (citation omitted)." *Bollander, supra*, at 37, 537 P.2d at 24.

None of the enumerated situations applies to reinstatement of a jury verdict of guilt. The Court of Appeals held in *State v. Allen, supra*, citing *Wilson, supra*, that "[w]here there is no threat of multiple prosecution the double jeopardy clause is not offended." *Allen, supra*, 27 Ariz.App. at 583, 557 P.2d at 182. We therefore hold that Clifton

would not be placed twice in jeopardy by an order reinstating the jury verdict of guilty.[6]

Clifton next contends that although the state has no right of appeal, special action jurisdiction does not automatically follow. He argued below that the relief the state was seeking was in the nature of a writ of mandamus and that mandamus would not lie to correct discretionary acts of a judicial tribunal.

■ An examination of the Special Action rules, however, reveals that the reviewing court may consider whether a determination by a judicial tribunal constituted an abuse of that tribunal's discretion. 17A A.R.S. Special Actions, Rules of Proc., Rules 2(a) and 3(c). Further, Rule 1(a) provides that "[s]pecial forms and proceedings for [the writs of certiorari, mandamus, or prohibition] are replaced by the special action provided by this Rule, and designation of the proceedings as certiorari, mandamus, or prohibition is neither necessary nor proper." 17A A.R.S. Special Actions, Rules of Proc., Rule 1(a). Even prior to the promulgation of these Rules, this Court had held that regardless of the technical title of the writ, relief would be granted if the circumstances were appropriate. *Buell v. Superior Court of Maricopa County*, 96 Ariz. 62, 391 P.2d 919 (1964); *State v. Superior Court in and for County of Maricopa*, 95 Ariz. 319, 390 P.2d 109 (1964). Thus Clifton's contention that mandamus is not the proper remedy in a special action for an alleged abuse of judicial discretion is without foundation.

■ Clifton's jurisdictional challenge does, however, raise the question whether our appeals courts are authorized by a special action to review a fact-based determination of a lower court. An appeals court will have jurisdiction to entertain a petition for special action provided that the relief it grants does not "enlarg[e] the scope of the relief traditionally granted under the writs of certiorari, mandamus, and prohibition."

17A A.R.S. Special Actions, Rules of Proc., Rule 1(a).

Allegations of abuse of discretion, such as that made by the state in the case at bar, had come to fall more commonly within the grounds for issuance of a writ of certiorari, *see, e. g., Martin v. Superior Court in and for Co. of Maricopa*, 104 Ariz. 268, 451 P.2d 597 (1969); *Genda v. Superior Court, County of Pima*, 103 Ariz. 240, 439 P.2d 811 (1968), overruled on other grounds, *Helber v. Frazelle*, 118 Ariz. 217, 575 P.2d 1243 (1978); *State v. Superior Court in and for County of Maricopa*, 95 Ariz. 319, 390 P.2d 109 (1964), although mandamus was occasionally used to correct serious abuses of discretion. *See, Rhodes v. Clark*, 92 Ariz. 31, 373 P.2d 348 (1962); Lesher, Extraordinary Writs in the Appellate Courts of Arizona, 7 Ariz.L.Rev. 34 (1965). During the earlier history of the writ procedure review by writ of certiorari was limited to an examination of the jurisdiction of an inferior board or tribunal and questioned whether that jurisdiction had been exceeded. *See, e. g., Hazard v. Superior Court*, 82 Ariz. 211, 310 P.2d 830 (1957); *Hunt v. Norton*, 68 Ariz. 1, 198 P.2d 124 (1948). Findings of fact would not be reviewed, and a decision of the lower court supported by substantial evidence was considered binding on the reviewing court. *Norton, supra*. The reviewing court would examine jurisdictional facts, however, to determine whether the lower court had jurisdiction. *Duncan v. Truman*, 74 Ariz. 328, 248 P.2d 879 (1952); *Norton, supra*.

As we have indicated, that limited form of review by certiorari has been expanded over time to include inquiries into abuse of discretion, *see Martin, supra; State v. Superior Court in and for County of Maricopa*, 95 Ariz. 319, 390 P.2d 109 (1964); *Lesher, supra*, and a "concern to see that essential justice is done." *Genda, supra*, 103 Ariz. at 242, 439 P.2d at 813. As a result of these expansions, reviewing courts have become

---

**6.** The double jeopardy problem in the case at bar is distinguishable from that posed in *Rolph, supra*, note 3. In that case, an appeal was taken from the mid-trial grant of a directed verdict of acquittal; to allow an appeal in such

a case would offend traditional notions of double jeopardy by requiring further prosecution in the form of a second trial. *See Washington, supra; Bollander, supra*. Here, however, there is no necessity for further prosecution and trial.

more willing to examine the sufficiency of the facts supporting a challenged lower court action. *See Arizona Dept. of Public Safety v. Dowd*, 117 Ariz. 423, 573 P.2d 497 (App.1977); *Genda, supra.*

Our research has disclosed a case, however, in which this Court held that a review of the evidence to determine whether a justice of the peace erred in his conclusion of insufficient probable cause after a preliminary examination was not within the scope of the writ of certiorari. *State v. Kingman Justice Precinct Court of Mohave Co.*, 88 Ariz. 342, 356 P.2d 694 (1960). We stated there that "[i]t is not for this Court to act as a magistrate and conclude that the Justice of the Peace was wrong on the facts. The presumption of innocence attaching to all defendants in criminal proceedings forbids us from so weighing the evidence." *Id.* at 344, 356 P.2d at 695. The following considerations, however, mandate that we not apply the principles of that case to the case at bar.

■ First, as has been shown, our appeals courts have increasingly expanded the scope of review when considering petitions for the extraordinary writs and special actions. To return to the narrow standard expounded in *State v. Kingman, supra,* would require that we overturn or distinguish a great number of cases decided in the intervening years. Second, the burden of proof at the trial level for criminal actions is much more stringent than at the level of the preliminary examination. Third, the state in *State v. Kingman, supra,* had another remedy: to seek a second preliminary examination. *State v. Kingman, supra.* In the case at bar, the state has no other remedy to test the efficacy of the trial court's ruling. In light of these considerations, and where double jeopardy is not implicated, it is not unreasonable to review the evidence supporting that ruling.

■ We have previously stated the standard to be applied to an evidentiary review: the facts must be examined most strongly in favor of upholding the jury's verdict. *State v. Parker*, 113 Ariz. 560, 558 P.2d 905 (1976); *State v. Gay*, 108 Ariz. 515, 502 P.2d 1334 (1972). When applying that standard, we must balance certain considerations. The trial judge is under no obligation to grant a motion for directed verdict of acquittal where there is substantial evidence that an accused has committed the crime charged. *State v. Mosley*, 119 Ariz. 393, 581 P.2d 238 (1978); *Parker, supra.* Alternately, the court should not grant a directed verdict if reasonable minds can differ on the inferences to be drawn from the evidence. *Mosley, supra; State v. Latino,* 25 Ariz.App. 66, 540 P.2d 1285 (1975), and "[a]ny fact discrepancies are for the jury to resolve." *State v. Lippard*, 26 Ariz.App. 417, 421, 549 P.2d 197, 201 (1976). On the other hand, "where the trial judge has a conscientious conviction that all the elements of an offense have not been established beyond a reasonable doubt * * * he has not only the right but the duty to direct a verdict of acquittal." *State v. Schantz*, 98 Ariz. 200, 205, 403 P.2d 521, 524 (1965). *See also State v. Byrd*, 109 Ariz. 387, 509 P.2d 1034 (1973); *State v. Ganster*, 102 Ariz. 490, 433 P.2d 620 (1967).

Clifton contends that the Court of Appeals determined incorrectly that there was substantial evidence to support the jury verdict, arguing that the state failed to prove that on or about September 8, 1977, as charged in the indictment, he took money not intending to perform services as an attorney. The intent necessary for a conviction of theft under former A.R.S. § 13–661 was to permanently deprive the owner of the possession and use of his property. *State v. Cravin*, 96 Ariz. 346, 395 P.2d 706 (1964); *State v. Batt*, 24 Ariz.App. 347, 538 P.2d 776 (1975). Where theft by false pretenses was charged, the false representations must have been of an existing or past fact, and the person injured thereby must have believed the representations and parted with his property in reliance thereon. *State v. Brown*, 97 Ariz. 310, 400 P.2d 111 (1965). The state was required to prove, therefore, that on September 8, 1977, when Clifton accepted a partial retainer, he was thereby representing that he would perform the services for which he took the money and that he had no present intent to do so.

Where a question of intent is involved, the jury must frequently examine circumstantial evidence to determine whether the accused acted with the requisite criminal intent, particularly where defendant's testimony denying criminal intent conflicts with the conclusions of other witnesses. *State v. Bellamy*, 25 Ariz.App. 197, 542 P.2d 35 (1975). The jury must consider and decide issues of credibility in such instances. *State v. Morales*, 110 Ariz. 512, 520 P.2d 1136 (1974); *Bellamy, supra*. The evidence in the case at bar shows that Clifton denied taking money with the intent to do no work for Steven Pritchard. It also shows that on three occasions, September 8, September 16 and October 11, he accepted payments from Pritchard, although Pritchard testified that there were never any legal services performed. There is conflicting testimony both as to whether Clifton had arranged substitute counsel and as to whether he had adequately notified Pritchard of the suspension. In view of this conflicting evidence, the jury was free to resolve the question of intent against Clifton.

When, a defendant makes a motion for acquittal, he raises a question of the sufficiency of the evidence, *State v. Jones*, 125 Ariz. 417, 610 P.2d 51 (1980); *State v. Harvill*, 106 Ariz. 386, 476 P.2d 841 (1970), but not of its competency. *Harvill, supra*. In the instant case, the trial judge denied Clifton's motion at the close of the state's case stating that there was "enough evidence to go to the jury indicating that [Clifton] didn't intend to perform" even though the evidence was conflicting. The judge again denied the motion at the close of all the evidence, although there is no indication in the record of his reasons, and then submitted the case to the jury. When Clifton's attorney renewed the motion after the jury verdict of guilt on Count I, the judge granted the motion finding that there was "no substantial evidence to warrant a conviction" but without stating his reasons.

By denying a motion for acquittal before verdict under Rule 20(a), Rules of Criminal Procedure, 17 A.R.S., the trial judge has ruled that he has reviewed the evidence and has concluded that there is sufficient competent and relevant evidence properly in the record that reasonable minds might find the defendant guilty. By submitting the case to the jury, the implication is that there are factual matters in dispute and that as a matter of law the judge believes that there is at least sufficient evidence on all elements of the crime to allow the jury to exercise its duty to resolve the question of guilt or innocence. If the jury then returns a verdict of guilty, the question of the quantity and quality of the evidence previously evaluated by the judge and jury may be again called into question by reurging a pre-verdict motion for acquittal under Rule 20(b).[7] At this point the judge may only redetermine the quantum of evidence if he is satisfied that he erred previously in considering improper evidence. To find that the evidence was sufficient before the jury got the case, but not after, can be justified only on the basis of a mistake of law on the part of the court and not fact on the part of the jury. If after verdict of guilt the trial judge grants a motion for acquittal but does not specify in his order the legal basis for his finding "no substantial evidence to warrant a conviction" 17 A.R.S. Rules of Criminal Procedure, Rule 20, we must assume on review that he has disagreed with the jury's fact-finding and is not now raising some previously undisclosed legal, rather than factual, deficiency. Absent a change in position on prior evidentiary rulings by the trial judge, this is not proper.

Although the judge may direct a verdict of acquittal where he has a conscientious conviction that the elements of the offense have not been proven, *Schantz, supra*, we have no indication of what constitutes that conscientious conviction where the trial judge has not specified the legal conclusions supporting his decision.

---

7. The facts of this case do not require us to determine whether the same principles apply to a motion for a new trial under Rule 24.1, Rules of Criminal Procedure, 17 A.R.S.

■ Here the trial judge gave no reasons for his finding of no substantial evidence. We, therefore, hold that by vacating the jury verdict of guilt, he abused his discretion. The order granting the motion for a judgment of acquittal is set aside, and the jury verdict of guilty on Count I is reinstated. The matter is remanded to the trial court, and date for sentencing shall be set.

HOLOHAN, V. C. J., and HAYS and CAMERON, JJ., concur.

STRUCKMEYER, Chief Justice, dissenting.

The basic facts of this case are relatively simple and bear restating. Mickey L. Clifton, an attorney-at-law, was convicted of one count of theft by false pretenses, a felony. At his trial, at the close of the State's case and again at the close of defendant's case, Clifton moved for a judgment of acquittal pursuant to Rule 20a, Rules of Criminal Procedure. These motions were denied. After the jury returned a verdict of guilty, the motion for acquittal was renewed pursuant to Rule 20b. The Superior Court granted the motion, set aside the jury's verdict, and ordered the entry of a judgment of acquittal. Since Rule 20b provides that "A motion for judgment of acquittal made before verdict may be renewed by a defendant within ten days after the verdict was returned", it cannot be doubted but that the Superior Court had the jurisdiction to hear and decide the motion.[1]

After the entry of the judgment of acquittal, this special action was initiated in the Court of Appeals. It held that the judgment of acquittal was not appealable "as an order made after judgment" (the only judgment was the judgment of acquittal); and, consequently, there was no plain, speedy and adequate remedy by appeal. It

examined the evidence to determine whether there was "substantial evidence" to support the jury's verdict, and concluded that there was.

In the posture of this case, although neither party suggested or argued that certiorari was an appropriate remedy, the Court concludes, nevertheless, "Allegations of abuse of discretion, such as that made by the state in the case at bar, had come to fall more commonly within the grounds for issuance of a writ of certiorari" and "An examination of the Special Action rules, however, reveals that the reviewing court may consider whether a determination by a judicial tribunal constituted an abuse of that tribunal's discretion", citing Rules of Procedure for Special Actions, Rules 2(a) and 3(c), 17A A.R.S. It is these conclusions which compel my dissent.

The Supreme Court, by the Arizona Constitution, Art. 6, § 5, subd. 5, has the "Power to make rules relative to all procedural matters in any court." Pursuant to that power, this Court in 1969, effective the first day of January, 1970, promulgated the "Rules of Procedure for Special Actions— [Extraordinary Writs—Certiorari, Mandamus, Prohibition]." By Rule 1(a) of the Rules, it was expressly provided that:

"* * * nothing in these rules shall be construed as enlarging the scope of the relief traditionally granted under the writs of certiorari, mandamus and prohibition."

The State Bar Committee notes, which were included in the order promulgating the Rules, stated:

"The writs [prohibition, mandamus and certiorari] are constitutional in Arizona, Ariz.Const. art. 6, §§ 5, 18, as amended, and the rule does not alter their substance but merely establishes the procedure for obtaining their remedies. Under the special action, the relief obtainable includes any relief which was formerly

---

1. The word "jurisdiction" means the authority to decide or judge and is not dependent on the correctness of the decision made by the court. *Eastin v. Broomfield*, 116 Ariz. 576, 570 P.2d 744 (1977); *Greater Arizona Savings & Loan v. Tang*, 97 Ariz. 325, 400 P.2d 121 (1965); *City of*

*Phoenix v. Rodgers*, 44 Ariz. 40, 47, 34 P.2d 385 (1934). The words "right", "power" and "authority" are often used loosely as synonymous and interchangeable with the word "jurisdiction."

granted under the labels of certiorari, mandamus, and prohibition. The Rule, which does not 'abridge, enlarge, or modify substantive rights of a litigant' is authorized by A.R.S. § 12–109A, * * *."

This is consistent with Art. 6, § 5, 5, of the Constitution of Arizona, since obviously the power is not granted to change the substantive law of the State by rules of court—in other words, to act as a super legislature.

The substantive law of this State in 1969 as it related to certiorari was set forth in *State v. Kingman Justice Precinct Court of Mohave County*, 88 Ariz. 342, 356 P.2d 694 (1966), from which I quote:

> "This Court has on many occasions held that certiorari tests only the *jurisdiction* of the tribunal whose order is under review; that is, whether the tribunal had jurisdiction of the parties and the subject matter, and had power to render the particular order; not whether its conclusion was right or wrong. See A.R.S. § 12–2001; also, e. g.: *Welker v. Stevens*, 82 Ariz. 233, 311 P.2d 832; *Hazard v. Superior Court*, 82 Ariz. 211, 310 P.2d 830; *Wall v. Superior Court*, 53 Ariz. 344, 89 P.2d 624; *City of Phoenix v. Greer*, 43 Ariz. 214, 29 P.2d 1062; *State ex rel. Andrews v. Superior Court*, 39 Ariz. 242, 5 P.2d 192." 88 Ariz. at 344.

Clearly the majority decision, when it concludes that "it is not unreasonable to review the evidence supporting that ruling"—the lower court's ruling on the motion for acquittal—conflicts with the constitutional powers granted to this Court.

Moreover, the Court's opinion patently offends the specific mandate of A.R.S. § 12–2001. There, the scope of certiorari by specific legislative mandate is limited to cases where the inferior tribunal has exceeded its jurisdiction. It provides:

> "The writ of certiorari may be granted by the supreme and superior courts or by any judge thereof, in all cases when an inferior tribunal, board or officer, exercising judicial functions, has exceeded its jurisdiction and there is no appeal, nor, in the judgment of the court, a plain, speedy and adequate remedy."

The only power this Court has on certiorari is to determine whether the Superior Court had the jurisdiction to grant the motion for a directed verdict of acquittal, and not whether the trial court decided the motion incorrectly on the merits.

The majority justify their opinion because the Court of Appeals has "increasingly expanded the scope of review", a statement which, after examining the cases cited, I question. But, in any event, this cannot justify the utter disregard of the constitutional limitation the people have placed on the Court or the arrant disregard for the statute.

For the foregoing reasons, I dissent.