250 P.2d 985

**STATE v. CHEE.**

No. 1026.

Supreme Court of Arizona.

Dec. 8, 1952.

Stover & Martin, Tucson, for appellant.

Fred O. Wilson, Atty. Gen., Robert Morrison, Pima County Atty., Tucson, for appellee.

KELLY, Superior Court Judge.

The defendant appeals from a judgment of conviction of perjury. The trial was upon an indictment by the grand jury of Pima county and the charge was that the perjury was committed in the making of false answers to questions propounded to defendant while he was a witness at the inquisition being conducted by it.

The assignments made upon the taking of the appeal were two, viz., (1) that in the form in which the indictment was returned no public offense was stated in that there was lacking an averment that the allegedly perjurious testimony was to a material matter; and (2) that the trial court erred in allowing an amendment of the indictment, over objection, correcting the defect upon an essential matter of substance.

During the course of the appeal appellant has called attention to a further alleged error which he deems to be a fundamental one and asks this court to take cognizance of it even though the point now raised was not originally presented by due assignment. This alleged error was procedural, and the vice complained of is that nowhere in its instructions to the jury did the trial court mention the statutory "quantitative" rule, peculiar to an extremely limited number of criminal offenses, and which as to perjury requires for conviction the testimony of two witnesses, or of one witness and corroborating circumstances, Section 44–1812, A.C.A.1939, but did give an instruction that the jury could convict upon circumstantial evidence alone. The fault, if any, of the instruction given does not arise from any defect in the definition of circumstantial evidence, or of the conclusive quality it must be found to possess to support a conviction; but the question posed is whether the instruction is proper to be given as a sole standard to the exclusion of the statutory requirement applicable to the cause.

No request is shown by the transcript to have been made by defendant's counsel to instruct upon the "quantitative" rule set forth in the penal code. To the contrary there are some indications in the transcript that counsel for defendant did not wish

this instruction to be given. In the fragmentary report of oral proceedings in chambers before a disposition of requests was made, the State's counsel made the statement—"Let the record show that he did not want instruction No. 2 Sec. 44-1812." But there is nothing either before or following this interjection to indicate that the court heard the statement, and the record cannot be made by a statement of one alone of counsel without an acceptance of it, or without the statement of the court upon it. We must take the situation therefore as one where a request was not made, either to give or not to give the particular instruction, and the question becomes one as to whether the failure to state to the jury the statutory measure upon the quantum of proof required to support a conviction for perjury is error, and if so whether it is fundamental error.

The answers to these questions can be arrived at only from a consideration of the rights impinged upon by the omission to charge and by the charge given. The very recent case of State v. Betts, 71 Ariz. 362, 227 P.2d 749, answers both questions in the affirmative. In view of the undoubted far-reaching implications of that holding, and despite the fact that it was of the very essence of the opinion and entitled to be accepted at face value as authority, it has not been dogmatically relied upon as a precedent sufficient unto itself to direct the result to be reached here. A review of numerous authorities from many jurisdictions will confirm the statement that the rule of the Betts case is sound and correct by all of those tests common to be applied in the absence of unanimity of decision; and contrary results have usually been reached because of features peculiar to the case or to the procedural practices of the jurisdiction. One of such cases, illustrative of the distinction, is Goins v. United States, 4 Cir., 99 F.2d 147, in which it was held, one judge dissenting, and certiorari dismissed, 306 U.S. 622, 59 S.Ct. 783, 83 L. Ed. 1027, upon a collateral point, that the failure to give to the jury the "numbers" rule was not reversible error when the proofs, in large part documentary, were overwhelming. Another, mentioned merely by way of illustration, is Scott v. State, 77 Ark. 455, 92 S.W. 241, in which the omission to charge was held not ground for reversal because a request had not been made, there being no duty upon the court without it.

The numbers rule, so called by Wigmore, is said by him to be an exotic adopted from the Roman system and it is criticised by him as unsound, futile, and inconsistent with Anglo Saxon principles of jurisprudence in this area of the law of evidence. He reports, Wigmore on Evidence, 3rd, Section 2033, with apparent approval, Napoleon's epigram when he abolished the rule in establishing the law for the Rhine province: "Thus one honorable man by his testimony could not prove a single rascal guilty; though two rascals by their testimony could prove an honorable man guil-

·ty." It may be remembered, however, that this eminent author approaches his subject with the outlook of the philosopher, sometimes more concerned with the discovery ·and declaration of truth than with practi- ·cal considerations which also must be taken into account in the administration of justice and which experience commends as wise and salutary. The reason for the rule is policy; it is for the protection of the witness from the reprisal he could be subjected to if he could be condemned by oath against oath, and it thus encourages the ·elicitation of truth. A similar rule appli- ·cable to treason is not found to encourage the offense, but it does assure against abus- ·es such as those of the Star Chamber.

The case of Weiler v. United States, 323 U.S. 606, 65 S.Ct. 548, 89 L.Ed. 495, 156 A:L.R. 496, not only represents the rule in the federal system upon a federal stat- ute comparable to our Section 44–1812, A. C.A.1939, but it typifies as well the rule in practically all of the states which have similar legislation. In this case the court was asked to reexamine and abandon the ·ancient rule which in practical application requires the court to instruct the jury upon the "quantity" of proofs fixed by legisla- tion as necessary to authorize a conviction for perjury. The answer to the Govern- ment's request was that this special rule is deeply rooted in past centuries and that it serves an admirable purpose in the prac- tical administration of justice. Quoting from their earlier case of Hammer v. Unit-

ed States, 271 U.S. 620, 46 S.Ct. 603, 604, 70 L.Ed. 1118, their language is:

"The application of that rule in fed- eral and state courts is well nigh uni- versal. The rule has long prevailed, and no enactment in derogation of it has come to our attention. The ab- sence of such legislation indicates that it is sound and has been found satis- factory in practice. [Citations.]"

■ In that case as in this the requisite number of witnesses testified, and upon the appeal the claim was made that it was for the court to determine whether the quan- titative rule of evidence had been satisfied. The claim was flatly rejected, for the func- tion of finding upon the facts is exclusively for the jury. The constitutional right of the accused to have the jury find upon the facts, under proper instructions as to the quantity of evidence necessary to authorize a conviction, being a fundamental one, it cannot but be held that the rule of the Betts case is unqualifiedly correct and must be given adherence.

A reversal being required it becomes nec- essary to consider the assignments having to do with the sufficiency of the indictment, and with the nature of the amendment made before trial at the motion of the State's attorney.

To make clear the point under consid- eration it is necessary to set down at least a substantially complete rescript of the in- dictment under which the prosecution was

had, and of the amendment allowed to be made. The indictment was in this language:

"The Grand Jurors of the County of Pima, on this 25th day of April, 1951, now accuse G. S. Chee of the crime of Perjury, a felony, and a violation of Section 43–4201, A.C.A.1939, as follows:

"That on or about the 11th day of April, 1951, and before the finding of this Indictment, at Tucson, Pima County, Arizona, the said G. S. Chee did then and there, after being duly sworn by William J. Reed, the duly appointed foreman of the Grand Jury of Pima County, Arizona, to tell the truth in the Inquest then being heard by said Grand Jury, said William J. Reed having authority to administer oaths, did unlawfully, wilfully, corruptly, knowingly, falsely and feloniously, testify in substance, as follows:

" 'That he has never owned and/or operated slot machines and that he does not now either own or operate slot machines in Pima County, Arizona.' "

"That the foregoing testimony was at the time that he so testified, false and untrue."

The amendment made upon the motion of the county attorney, and allowed by the court on the day before trial, over the objection of defendant, was as follows:

"That the foregoing testimony was material and that the said G. S. Chee knew at the time he so testified that the foregoing testimony was false and untrue."

It may be said now, in simplification of the immediate question, that the witness accused was amply advised before being put on oath at the Inquest of his privilege not to testify, and of the penal consequences arising from the giving of false testimony. The single point in controversy is the claim of appellant that the allegation of materiality is an essential requirement to the validity of the charge of perjury; that unless the materiality of the allegedly perjurious testimony appears either from the use of express words or from facts alleged from which it can be concluded, as a matter of law, that the testimony upon which the charge is predicated was material to the issue under consideration in the proceeding in which the perjurious testimony was given, no crime is stated and no power of the court is invoked. In shorter words the point raised is that in its original form the indictment states no offense; that the amendment went not to form but to substance, and as such it was not within the power of the county attorney to make or of the court to allow.

■ It is, of course, clear that "false swearing" and "perjury" are separate things. All "false swearing" is not perjury. In Arizona, as in all other jurisdictions, the quality of materiality of the

perjurious testimony to the issue in which it is given is necessary to raise the "false swearing" to the degree of perjury. The lesser offense is one unknown to the laws of this state as an indictable offense. And it is further beyond all question that the indictment as returned does not contain any express allegation that the testimony complained of was material to the matters under investigation by the grand jury.

■ It is fundamental to the pleading of perjury that the materiality of the testimony can properly be made to appear in either of two alternative ways,—by a direct allegation, or by so setting out the nature of the issue that, as a matter of law it may be said that the testimony assigned was material.

It may at the least be arguable that the materiality of the testimony assigned as perjurious to the matters then before the grand jury inquest being conducted sufficiently appears by reasonable or necessary implication, as a matter of law, from the language and context of the indictment, and within the four corners of the instrument itself. The power, even the duty, of the grand jury to conduct an inquest upon every phase of life involving crime within its county is broad. Indeed, its limits would be extremely difficult to define. See Section 44–617 et seq. A.C.A. 1939. The statute places a special interdiction upon the operation of slot machines. Section 43–2701, A.C.A.1939. The point is neither labored nor relied upon, however,

for State's counsel here no more than mention it, and pass on to the consideration of matters deemed more fundamental than the disposition of the immediate case.

The point is made that we are not to consider this pleading, nor indeed any criminal pleading, from the standpoint of common-law requirements or the statutory adaptation of them as of a time prior to the promulgation of the new rules of criminal procedure made effective April 1, 1940, but that on the contrary those new rules set up new standards by which alone the sufficiency of the indictment must be judged. In fine the contention is that the new rules have completely abrogated and become the substitute for the statutory procedures theretofore in effect, and, having the force and effect of law now provide the test of conformity of the pleading to the requirements. It is this claim that must be addressed.

Changes in the rules of civil procedure paralleling in point of time those adopted for procedure in criminal causes have been many times given effect, e. g., in Kauffroath v. Wilbur, 66 Ariz. 152, 185 P.2d 522; and logically there is to be found no distinction to justify the acceptance of one code of rules, and the rejection of the other.

Section 1–104, A.C.A.1939, explicitly states that:

"When a statute has been enacted and has become a law, no other statute

or law, is continued in force because it is consistent with the statute enacted, but in all cases provided for by the subsequent statute, the statutes, laws and rules, theretofore in force, whether consistent or not with the provisions of such subsequent statutes, unless expressly continued in force by it, shall be deemed repealed and abrogated."

Stated in different language the question is whether in Arizona after the adoption of the new rules we have two systems of pleading in effect,—one based upon the rigorous requirements of our inherited common law as it has been adapted into acts of the legislature, and one based upon the rules adopted by this court pursuant to legislative authority and intended to simplify and improve upon procedures then existing and to eliminate anachronisms and the failure of justice through technicality.

The rules have been adopted; and the history of the movement for greater simplicity of pleading and of all other formal procedure is too recent in memory to require repetition. Our concern is not with the wisdom of, but with the effect to be given, the reformation. A case illustrative of the degree to which matters of form had taken the ascendancy over matters of substance, dealing also with perjury and in which the matter in issue was one of pleading, is that of State v. Broshears, 18 Ariz. 356, 161 P. 873. It was to correct what appeared to be the failure of justice due

only to technicality, and to enable the courts to be more responsive to both the need and the spirit of the times, that power was conferred on this court to modernize procedural processes; and it was this objective that beyond all doubt motivated the court in promulgating the present rules. Cf. 53 Harvard L.Rev. 122 on "streamlining the indictment."

It is obvious that it is at once impractical and incongruous, to use the mildest language, to operate under two codes in many ways antagonistic one to the other in their requirements. The statutory renditions of the common law in great measure preserved the niceties and technicalities of its system of pleading. The new rules, using those requirements and the usages implementing them as the base upon which to rest the improvement of simplicity sought for, without lessening the ancient rights of the accused, and taking from him only the advantage dubiously proper for him to have of reliance upon technicality of no relationship to the merits, have set new standards for testing the sufficiency of the charge.

The innovation has been slow of acceptance both by the bar and the bench. The conservatism of the profession, a characteristic of it generally, has manifested itself in this tardiness to break with the past and to accept the new order. The present indictment is illustrative of the doubts besetting the profession. It is an adaptation of both the old and the new, full reliance·

not being had upon either. Similarly, the notes of the compiler of Arizona Code Annotated 1939 under various sections of the code of criminal procedure indicate at least some uncertainty of the effect of the new rules in relation to corresponding sections in effect when the rules were adopted.

The rules of criminal procedure are not fragmentary or makeshift. They purport to put into effect a new system, and a complete one so far as any system can be said to be complete in whose nature growth is inherent. It savors of the absurd that some of the rules should be in effect, but others not so, with no standard or justification for the differentiation. Rather it must be held that all, not contravening constitutional limitations nor in excess of the power conferred by the enabling legislation, are in effect. In their proper field they are, or are the equivalent of, new legislation.

It appears, then, that at the inception of this cause those sections of the rules of criminal procedure relating to the form of the indictment, Section 44–707, A.C.A.1939 and ranging on through Section 44–753, setting out model forms suitable for use, and beyond, were in effect. These paragraphs constitute what may be called the heart of the process of simplification of procedural requirements in the law of crimes. It may be noted that the new practice of pleading was permissive, not mandatory. The object, as throughout the rules, was for simplicity, to avoid the pitfalls of technicality; and in no sense could the intention have been to lay a trap for the feet of prosecuting officers of the state in relying upon the new system. If, in spite of the adoption of the new rules those requirements for which a substitute was intended still subsist in their pristine rigor, the result is not only useless and a waste of effort but is in the highest degree subversive of the integrity of the courts. The mountain will have become a mole hill; or, worse, it becomes a pirate's beacon of safety to lure the mariner upon the rocks and shoals of danger and destruction. The honest purpose behind them, absent constitutional or ultra vires objection, can be given effect only by accepting the rules and using them as the standard by which to test the sufficiency of the indictment.

Two of the rules, Sections 44–742 and 44–753, specially mention perjury, the latter giving in haec verba the form of indictment which "may be used * * * A. B. committed perjury by testifying as follows (set forth the testimony). * * *" This must be read in connection with other rules applicable in all cases, and not as a direction that the quoted words alone may be the beginning and the end of the pleading. The authorization so to plead eliminates the preexisting requirement of detail so amply delineated in the Broshears case, supra, and permits the charge to be made by calling the attention of the accused to, and by specifying, the alleged perjurious

words spoken. Another rule gives the accused the right to demand a bill of particulars to amplify his knowledge upon the charge he is required to answer. Our question is not an academic one as to whether Section 44–753, A.C.A.1939, is to be read literally as alone being sufficient to state the gravamen of the charge, but the very much narrower one as to whether the language used in this indictment in its context validly charges perjury, or "invokes the action of the court," in the absence of an averment that the testimony stigmatized as false was material to the matter in issue when it was given. In fine, the question is whether the new system of pleading deprives the defendant of any constitutional right.

▋ Article 2, section 24, of the Constitution of Arizona bestows upon every person accused of crime certain invaluable rights none of which can be said to be now in controversy unless it be that of having the right to "demand the nature and cause of the accusation against him". Of the rules of procedure Section 44–712 confers the right to demand a bill of particulars supplemental to the allegations set forth in the indictment. The constitutional guarantee does not in terms or by implication require that the "nature and cause of the accusation" appear in the indictment or information.

A leading case on this subject is State v. Shroyer, 49 N.M. 196, 160 P.2d 444, 449, one prosecuted under the new rules, from which we quote:

"As we appraise the statutes * * * the legislative purpose is easily to be recognized. It is proposed simply that the archaic method which has confounded courts and counsels over the years, where simplicity of expression has been sacrificed to prolixity and verbosity, be now replaced by a more simple and direct one. However, even though we correctly appraise the purpose of the statutes in this connection, we must yet conclude that they do not offend against the Constitution in those provisions hereinbefore discussed; and this we do."

The recent case of Paxton v. Walters, 72 Ariz. 120, 231 P.2d 458, may be referred to for a statement of the code provisions, and the reference will make unnecessary their repetition here. The information there under consideration was held to be void, but it did not purport to be based either upon the old practice or the new rules. The case further holds that the materiality of the perjurious testimony must be alleged; but this statement was made obiter, it is in no way necessary to the opinion, and it certainly was not meant as a deliberate and authoritative pronouncement for it leaves out of account the well-recognized alternative method of making the materiality to appear even under the ancient forms.

It is unquestionably true that the demand for reformation of procedure in both the civil and criminal branches of the courts grew out of burdensome technicality which did not help but rather impeded the arrival at truth upon controverted questions of fact. Rather than become ensnared in the same processes of meticulous adherence to form, it seems preferable to look at the greater objectives aimed at by the simplification of the rules, and to effectuate their objects:

"* * * the purpose of an indictment or information is simply to inform the accused of the charge which he must meet at the trial. * * * As was said in People v. Beesly, 119 Cal.App. 82, 6 P.2d 114, 115, 970: 'There, in a nutshell, is stated the principle of our present simplified form of pleading a criminal offense—the accused is entitled to notice of the offense of which he is charged but not to the particular circumstances thereof, * * *.' Where this information came solely from the indictment, as at common law, more particularity was required, but under our system, the law now provides, as part of the accusatory procedure, that in every criminal case the accused is entitled to a transcript * * *." People v. Curtis, 36 Cal.App.2d 306, 98 P.2d 228, 233. Further, from the same case, the following may be quoted:

"It is established in our law that it is for the judge presiding at the perjury trial to determine the materiality of the allegedly perjured testimony. The question of the materiality of evidence, whenever or however it arises, is always one for the court. Whenever the question of the materiality of evidence arises during the ordinary trial of a cause when one party offers evidence and its materiality is put in issue by appropriate objection, it is concededly a question of law for the court. The same is true when the question of the materiality of the charged false testimony arises in a trial for perjury. * * * The court's instructions to the jury that appellant's answers to these and other questions propounded to him in the grand jury room were material * * * were correct and proper."

It seems not possible that the defendant could have been prejudiced by the omission of a fact statement in the indictment when the determination upon it arises from the law and the question is not submitted to the jury as one of fact.

It is held, therefore, that the indictment in its original form stated an offense; that the motion in arrest of judgment was properly overruled; that it was not error to allow the amendment of the indictment, it being one of form and not of substance; but that because of the failure to give the jury an instruction upon

the statutory numbers or quantitative evidence rule the defendant was denied a fundamental right and he is entitled to a new trial.

Reversed, and a new trial ordered.

UDALL, C. J., and STANFORD, DE CONCINI and LA PRADE, JJ., concur.

PHELPS, J., being unable to take part in the case, the Honorable HENRY C. KELLY, Judge of the Superior Court of Yuma County, participated in his stead in the determination of this appeal.