583 P.2d 1346

**STATE of Arizona, Appellee,**

v.

**Frank Robert PARA, Jr., Appellant.**

**Nos. 1 CA–CR 2165, 1 CA–CR 2483.**

Court of Appeals of Arizona,
Division 1,
Department B.

May 25, 1978.

Rehearing Denied July 10, 1978.

Review Denied Sept. 7, 1978.

Bruce E. Babbitt, Former Atty. Gen. by William J. Schafer III, Chief Counsel, Crim. Div., Thomas G. Bakker, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Joel M. Glynn, Deputy Public Defender, Phoenix, for appellant.

## OPINION

EUBANK, Presiding Judge.

Appellant was found guilty of seven counts of receiving stolen property (A.R.S. § 13–621). In this appeal, he argues that the trial court committed several errors in the course of his jury trial. Since we hold that the jury instructions in this case require a reversal of appellant's conviction, we have no need to consider appellant's other assertions of error.

The evidence most favorable to the judgment is as follows: In October or November of 1974, Mr. Robert McCormick noticed approximately 12 stray horses on his ranch in Maricopa County. He called the Livestock Sanitary Board and described the brand that appeared on some of the horses. After learning that the brand was registered to appellant, McCormick called appellant's stables in Glendale and spoke to an employee of the appellant, requesting that the horses be removed from his ranch.

A few days later, appellant and his general manager, Leonard DesMarais, went to the McCormick ranch. They managed to herd the horses into a group, but failed to control them, and the horses scattered again. While they were in a group, however, appellant had an opportunity to examine the horses from a distance of ten to fifteen feet. When appellant and DesMarais lost the horses, they returned to speak with McCormick. Appellant informed McCormick and DesMarais that the horses were his, and told McCormick that someone from appellant's John Galt Stables would pick up the horses if McCormick could corral them.

McCormick ultimately captured nine horses. He phoned DesMarais, who transported the horses from McCormick's ranch to appellant's John Galt Stables in two trips. Although he did not specifically inspect the horses for brands, DesMarais noticed on the second trip that two horses bore appellant's brand.

The morning after DesMarais had brought the final load of horses to John Galt Stables, appellant once again viewed the horses as a group. He instructed DesMarais to begin renting these horses to the

public immediately.[1] Subsequently, he refused to allow DesMarais to brand or to sell any of the nine horses. DesMarais testified that these nine horses were the only ones that appellant had ever refused to sell. Appellant continued to visit the stable about once a week.

Several witnesses testified that the seven horses not carrying the appellant's brand were markedly different physically from appellant's other horses. Some of the seven were shod, while none of appellant's other horses were shod. There was a pinto with a disfigured right eye. Another horse was lame. A third horse carried a foreign brand. All the horses were noticeably better fed and more alert than appellant's other horses.

The distinguishing physical characteristics of the horses, coupled with appellant's unusual instructions regarding the horses, made DesMarais suspect that the horses did not belong to appellant. When DesMarais questioned appellant's ownership, DesMarais testified that appellant "told me if they weren't his horses, that I would fall with him if he would get charged with anything."

The pinto with the damaged eye died about a week before December 17, 1974. When informed by DesMarais of the horse's death, appellant instructed DesMarais to have an autopsy performed, then bury the horse. According to DesMarais, after the autopsy, the burial was begun by DesMarais, but finished by the appellant. DesMarais testified that normally dead horses were sold to a rendering company. In order for a rendering company to accept a horse's body, the owner first had to furnish proof of ownership. Most of the horses that died on the John Galt Stables, both before and after the death of the pinto, were sold to a rendering company.

About the same time that McCormick noticed the horses on his land, Robert Lockett discovered seven horses missing from his ranch. Six of the horses were owned by Lockett, the seventh was owned by Lockett's manager, Gary Mallory. On December 14, 1974, Lockett visited John Galt Stables, where he described the missing horses to appellant. Appellant denied any knowledge of Lockett's stray horses. Lockett then went to McCormick and inquired about his horses. McCormick told Lockett that his horses sounded similar to the horses DesMarais had taken to appellant's stables.

On December 17, 1974, Lockett, accompanied by his son and Officer Robert Nordtome of the Livestock Sanitary Board, returned to John Galt Stables. While Lockett and his son searched among appellant's stock for the missing horses, Officer Nordtome questioned appellant regarding the ownership of the seven horses. Appellant initially contended that he could produce ownership papers. He agreed to release the horses to Lockett only after Nordtome pointed out that one of the horses bore Lockett's brand. Lockett recovered six of the seven on December 17. Despite having buried the pinto a week before, appellant and DesMarais both asserted that the pinto was not on the ranch.

In September of 1975, DesMarais notified a veterinarian that the pinto was buried at the stables. The pinto was uncovered, and subsequently identified by Lockett and Mallory.

By information filed on October 17, 1975, appellant was charged with six counts of grand theft. This case proceeded to a trial by jury on February 17, 1976. Ten days later, the jury reported that it was hopelessly deadlocked. The court declared a mistrial and reset the matter for trial.

On March 9, 1976, a grand jury undertook an investigation of appellant. This investigation culminated in an indictment charging appellant with the commission of seven counts of receiving stolen property. The

---

1. Appellant's main source of income from John Galt Stables was derived from renting his horses to the public for recreational riding.

indictment recited a separate count for each horse taken to appellant's ranch. The jury in this case returned a guilty verdict on all counts. After appellant's motion for a new trial was denied, he brought this appeal.

■ The indictment charged appellant with violating A.R.S. § 13–621(A). That section states:

A person who, for his own gain, or to prevent the owner from again possessing the property, buys, sells, possesses, conceals or receives personal property, knowing or having reason to believe that the property is stolen, is guilty of a misdemeanor, if the value of the property is less than one hundred dollars, and is guilty of a felony if the value of the property is one hundred dollars or more.

This court has stated that a prima facie case under this statute consists of three elements: (1) receiving stolen property, (2) with guilty knowledge, and (3) intent either to deprive the owner of possession or to obtain it for the defendant's own gain. *State v. Butler*, 9 Ariz.App. 162, 166, 450 P.2d 128, 132 (1969). The first element of the crime requires proof not only that the defendant received the property, but also that the property was in fact stolen. *See State v. Carner*, 25 Ariz.App. 156, 158, 541 P.2d 947, 949 (1975); *State v. Vitale*, 23 Ariz.App. 37, 43, 530 P.2d 394, 400 (1975). In this case, the defense contested the state's allegations in regard to each of the three elements.

One of the main issues was whether the horses were actually ever stolen. The manner in which the horses came to be missing from Lockett's ranch does not imply a theft at that point in time. Lockett let the horses out on range land to graze for an extended period of time. Gradually, he became aware that the horses were no longer on his ranch. The state offered no evidence showing that the only way the horses could have gotten to McCormick's ranch was by theft. The only reasonable inference from the evi-

dence presented is that the horses simply strayed onto McCormick's ranch. Thus, the theft must have occurred at some other time.

The only two people who could arguably be said to have stolen the horses are DesMarais and the appellant; DesMarais when he transported the horses from McCormick's ranch to John Galt Stables, appellant by possessing and concealing horses he knew were not his.[2] DesMarais's actions cannot constitute theft because there is no evidence that he possessed the requisite intent to steal, see *State v. Abbey*, 13 Ariz. App. 55, 57, 474 P.2d 62, 64 (1970), when he transported the horses.

■ If the jury found that appellant realized at some point that some of the horses did not belong to him and subsequently concealed the horses from the true owner, then the horses became stolen property at that time. See A.R.S. § 13–661(A)(2). We believe the evidence was sufficient to send this issue to the jury. The appellant, however, was charged with receiving, possessing, or concealing this stolen property. Since only appellant could have been the thief, he could not also be guilty of *receiving* the stolen property. *See Reser v. State*, 27 Ariz. 43, 45, 229 P. 936, 936 (1924); *Leon v. State*, 21 Ariz. 418, 420, 189 P. 433, 434 (1920). He could be guilty of possessing or concealing stolen property. A California court, interpreting California Penal Code § 496, which is similar to A.R.S. § 13–621, has stated:

[E]ven the thief may be guilty of violating Penal Code section 496 where, as here, he is additionally charged with 'concealing and withholding' the stolen property, and the facts indicate such concealing and withholding to be completely divorced from the initial concealment following the theft.

*People v. Taylor*, 2 Cal.App.3d 979, 984, 83 Cal.Rptr. 119, 122 (1969). This additional conduct of the thief must be "acts of

---

**2.** The theft could also have occurred when McCormick had appellant remove the horses from McCormick's ranch. McCormick received $50 for his efforts in corralling the hors-

es. Appellant, however, told McCormick the horses were his, and there is no evidence which suggests that McCormick had any reason to believe otherwise.

concealment entirely separate and apart from the theft and sufficiently removed therefrom to constitute an independent course of conduct." *People v. Tatum*, 209 Cal.App.2d 179, 185, 25 Cal.Rptr. 832, 835 (1962). We believe the rule stated by the California courts is applicable to our statute. Thus, in order to return a verdict of guilty, the jury had to find (1) that appellant stole the horses by possessing or concealing them when he knew they were not his, and (2) that appellant committed further acts of possession or concealment. The evidence was sufficient to present a jury question on this issue.

■ The problem in this case is the inadequacy of the court's jury instructions regarding the elements of the crime. The court instructed the jury:

In order to find that the crime charged in the Indictment has been committed, you must find that the State has proven the following elements: One, that the property was actually stolen; two, that the person who is alleged to have received, possessed or concealed the property knew or had reason to believe the property was stolen; three, that said person received, possessed or concealed the property with the specific intention to prevent the owner from again possessing the property, or for his own gain . . .

We believe this general instruction is insufficient to inform the jury of the findings it must necessarily make in order to hold the appellant guilty. Initially, including the act of receiving in the instruction was an error that could have misled the jury. More important, while the instruction properly allowed the jury to hold the appellant guilty if it found he possessed or concealed stolen property, it failed to explain fully that the jury must find at least two distinct and separate acts of concealment.

■ We note that the defense neither objected to the instructions given nor requested further instructions. Normally, this failure would waive any error. Nevertheless, as our Supreme Court has stated:

While this court has repeatedly held that reversible error cannot be predicated on a mere failure to instruct, in an absence of a request therefor, [citations omitted]; these pronouncements have been in cases where the defendant desired special instructions on matters of defense and neglected to request the same. [citations omitted]. However, in a criminal case, the trial judge is required to instruct the jury on his own motion upon the law relating to the facts of the case and upon matters vital to a proper consideration of the evidence.

*State v. Pulliam*, 87 Ariz. 216, 222, 349 P.2d 781, 785 (1960). *See also State v. Brock*, 101 Ariz. 168, 416 P.2d 601 (1966); *State v. Chee*, 74 Ariz. 402, 250 P.2d 985 (1952); *State v. Urias*, 8 Ariz.App. 319, 446 P.2d 18 (1968). The omission in the instructions in this case allowed the jury to undertake its deliberations without being fully informed regarding the necessary facts it must find in order for it to render a guilty verdict. The omission thus concerned "matters vital to a proper consideration of the evidence."

■ Appellant contested the state's evidence on all the elements of the crime. Thus, the failure of the trial court to instruct the jury fully was prejudicial to his defense. This distinguishes this case from cases like *State v. Gamble*, 111 Ariz. 25, 523 P.2d 53 (1974), where the inadequate instruction did not prejudice the defendant.

■ We believe the failure of the trial court to instruct the jury on the law applicable to the facts of this case deprived the appellant of a fair trial and thus constitutes fundamental error.[3]

Judgment reversed.

JACOBSON and SCHROEDER, JJ., concur.

---

3. After appellant's conviction, he was placed on probation. In 1 CA–CIV 2483, appellant challenged the revocation of his probation.

Since we have reversed the underlying conviction, the revocation of appellant's probation must also be reversed.