NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JASON LEE HAWTHORNE, *Appellant.*

No. 1 CA-CR 16-0038
FILED 1-19-2017

Appeal from the Superior Court in Maricopa County
No. CR2014-141365-001
The Honorable Hugh E. Hegyi, Judge

**CONVICTIONS AFFIRMED AS MODIFIED; REMANDED FOR
RESENTENCING**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael Valenzuela
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Christopher V. Johns
*Counsel for Appellant*

Jason Lee Hawthorne, Cocolalla, ID
*Appellant*

---

## MEMORANDUM DECISION

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Margaret H. Downie and Judge Donn Kessler joined.

---

**C A T T A N I**, Judge:

¶1        Jason Lee Hawthorne appeals his convictions and sentences for theft, a class 2 felony, and theft of means of transportation, a class 3 felony.  Hawthorne's counsel filed a brief in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), certifying that, after a diligent search of the record, he found no arguable question of law that was not frivolous.  Counsel asks this court to search the record for reversible error.  *See State v. Clark*, 196 Ariz. 530, 537, ¶ 30 (App. 1999).

¶2        Hawthorne filed a supplemental brief in which he raises the following issues: (1) the sufficiency of the evidence to prove that he knew or should have known the trailer was stolen, and (2) potential anti-military jury bias.  Additionally, we ordered *Penson*[1] briefing to address whether Hawthorne's theft conviction was properly classified as a class 2 felony.  For reasons that follow, and consistent with the State's concession of error, we reclassify Hawthorne's theft conviction as a class 4 felony and remand for resentencing.  We affirm in all other respects.

### FACTS AND PROCEDURAL BACKGROUND

¶3        In early July 2014, Hawthorne came across a trailer in a parking lot designated for the resale of vehicles (the "lemon lot") on Luke Air Force Base.  Although vehicles parked in the lemon lot typically display a "for sale" sign, the trailer was not marked for sale.  The trailer also had a flat tire.  Hawthorne was interested in purchasing the trailer, and returned to look at it several times over the next few weeks.

¶4        A few weeks later, Hawthorne noticed that a sticker had been placed on the trailer, informing the owner that it had been improperly parked in the lemon lot and that it was subject to being towed.  Hawthorne inquired with the base's Outdoor Recreation Office and Security Forces

---

[1]        *Penson v. Ohio*, 488 U.S. 75 (1988).

about whether he could claim the trailer as abandoned property. Neither office had information about the trailer, but they rejected his request for permission to remove it. Security Forces referred him to the base legal department, who told Hawthorne they would not be able to meet with him for two weeks.

¶5    The next day, Hawthorne drove his truck to the lemon lot, cut the trailer's hitch lock, and towed the trailer back to his house in Peoria. He thereafter fixed the trailer's flat tire and obtained temporary registration from a third-party Motor Vehicle Division ("MVD") location. He stored the trailer and its contents at a secure storage facility.

¶6    The trailer's owners reported the trailer stolen the day after Hawthorne removed it. They had stored the trailer in the lemon lot while they looked for housing after a cross-country move. The trailer contained furniture, electronics, children's clothes, toys, and other belongings. After the trailer was taken from the lemon lot, the owners filed an insurance claim for $50,000. Base Security Forces eventually found Hawthorne after reviewing security footage from the day the trailer was taken. Hawthorne returned the trailer within a few hours of being contacted. Nothing had been removed from the trailer.

¶7    Hawthorne was charged with theft of property worth between $25,000 and $100,000, a class 2 felony, and theft of means of transportation, a class 3 felony. A jury convicted Hawthorne of both counts. For purposes of the theft count, the jury assigned the property a value of "$3,000 or more, but less than $25,000."

¶8    The superior court suspended imposition of sentence on both counts and placed Hawthorne on concurrent terms of two years' supervised probation. The court ordered Hawthorne to serve six months in jail as a condition of his probation for the theft count, with two days of credit for time served. Hawthorne timely appealed.

## DISCUSSION

### I.    Classification of Hawthorne's Theft Conviction.

¶9    We ordered *Penson* briefing to address whether the record supports classifying Hawthorne's theft conviction as a class 2 felony and, if not, whether the conviction should have been classified as a class 3 or class 4 felony. Because Hawthorne did not raise this issue in superior court, we review for fundamental, prejudicial error. *See State v. Henderson*, 210 Ariz. 561, 567–68, ¶¶ 19–20 (2005).

¶10 The classification of theft depends on the fair market value of the goods stolen at the time of the theft. Ariz. Rev. Stat. ("A.R.S.") § 13-1802(G); *see also* A.R.S. § 13-1801(A)(15).[2] Theft is a class 2 felony if the goods stolen have a value of $25,000 or more at the time of the theft, a class 3 felony if the goods are worth at least $4,000 but less than $25,000, and a class 4 felony if the goods have a value of at least $3,000 but less than $4,000. A.R.S. § 13-1802(G). Because the value of the property controls the classification of the offense—and, by extension, the resulting sentence—it must be found by the jury. *See State v. Wolter*, 197 Ariz. 190, 192, ¶ 12 (App. 2000).

¶11 As the State concedes, Hawthorne's sentence resulted in fundamental error because he was sentenced for a class 2 felony despite the jury's finding that the stolen property had a value of "$3,000 or more, but less than $25,000." *See State v. Thues*, 203 Ariz. 339, 340, ¶ 4 (App. 2002). The jury's verdict did not support classifying Hawthorne's conviction as a class 2 felony, which would have required a finding that the property had a value of at least $25,000. Moreover, the jury's verdict is insufficient to support reclassifying the conviction as a class 3 felony, as the jury did not make a finding that the property had a value of at least $4,000. Thus, we reclassify Hawthorne's conviction as a class 4 felony because the jury's verdict only shows that the property was worth at least $3,000. *See* A.R.S. § 13-4037(A).

¶12 Reclassification of Hawthorne's sentence from a class 2 to a class 4 felony reduces the maximum term of probation he could have faced from seven years to four years. A.R.S. § 13-902(A). Hawthorne received two years of probation, which would be permissible under either classification. Nevertheless, we will not assume the superior court would have imposed the same sentence if Hawthorne's conviction had been properly classified, and we thus remand for resentencing.

## II. Hawthorne's *Pro Se* Supplemental Brief.

¶13 Hawthorne argues that the State failed to present sufficient evidence that he knew or should have known the trailer was stolen and that the jury potentially suffered from an impermissible anti-military bias. Because Hawthorne did not raise these issues at trial, we review only for

---

[2] Absent material revisions after the relevant date, we cite a statute's current version.

fundamental, prejudicial error. *See Henderson*, 210 Ariz. at 567–68, ¶¶ 19–20.

## A.    Sufficiency of the Evidence.

**¶14**        Hawthorne was convicted of theft under A.R.S. § 13-1802(A)(5), which requires the State to prove that "without lawful authority, the [defendant] knowingly . . . [c]ontrol[led] property of another knowing or having reason to know that the property was stolen." Although "stolen property" is not defined in § 13-1802 or its accompanying definitions, the jury instructions (consistent with the definition applicable to the crime of trafficking in stolen property, *see* A.R.S. §§ 13-2301(B)(2), -2307) defined stolen property as "property of another . . . that has been the subject of any unlawful taking."

**¶15**        Hawthorne argues that the State failed to present sufficient evidence to prove that the trailer was stolen, or that he knew or should have known that the trailer was stolen.[3]  These arguments rely heavily on Hawthorne's asserted good-faith belief that he was following Arizona's abandoned vehicle statutes, A.R.S. §§ 28-4801 to -4884.

**¶16**        Sufficient evidence supports the jury's conclusion that the trailer was stolen.  Hawthorne never received permission from any party with authority to authorize the trailer's removal.  The instructions attached to the MVD-provided Abandoned Vehicle Report warn that a person who removes an abandoned vehicle from private property "must obtain written authorization from the owner or lessee of the property on a form prescribed by the Motor Vehicle Division."  *See* A.R.S. § 28-4834(D).  But when Hawthorne filled out an Abandoned Vehicle Report during his attempt to claim the trailer, he wrote "N/A" under "Vehicle Removal Ordered By," and he did not provide any written authorization permitting him to remove

---

[3]        Hawthorne also claims that there was insufficient evidence to prove that he intended to permanently deprive the victims of their property.  *See* A.R.S. §§ 13-1802(A)(1), -1814(A)(1).  But intent to permanently deprive, although relevant to a different manner of committing theft, is not an element of theft by controlling stolen property, the only theory of theft presented to the jury. *See* A.R.S. §§ 13-1802(A)(5), -1814(A)(5). We therefore need not consider whether the evidence presented was sufficient to prove Hawthorne intended to permanently deprive the victims of their property.

the trailer. The jury could reasonably conclude from this evidence that Hawthorne stole the trailer.[4]

¶17         This evidence also supports the jury's conclusion that Hawthorne knew or had reason to know the trailer was stolen. The cautionary language of the Abandoned Vehicle Report instructions put Hawthorne on notice that he needed written authorization to remove the trailer. Hawthorne also could have inferred the wrongfulness of his actions from the refusal of military personnel to give him permission to remove the trailer. Because § 13-1802(A)(5) only requires that Hawthorne had reason to know the trailer was stolen, his alleged good-faith belief that he had complied with the abandoned vehicle statutes does not excuse him from culpability. *See State v. Morse*, 127 Ariz. 25, 31 (1980) (noting that theft by controlling stolen property does not require specific intent, and reiterating that "ignorance, or lack of knowledge, of the law which forbids the conduct with which one is charged is no defense").

### B.      Jury Bias.

¶18         Hawthorne further argues that the jury's verdict could not have been fair and impartial because none of the jurors had military experience, and thus the jury could not know how the military operates. *See State v. Burns*, 237 Ariz. 1, 26, ¶ 110 (2015). Hawthorne is mistaken; one juror had served in the armed forces. And in any event, the exclusion of members of the military from the jury panel would not have violated Hawthorne's right to an impartial jury, nor the potential jurors' Equal Protection rights. *See* U.S. Const. amends. VI, XIV; *see also J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 143 (1994) ("Parties may also exercise their peremptory challenges to remove from the venire any group or class of individuals normally subject to 'rational basis' review."); *Gov't of the Canal Zone v. Scott*, 502 F.2d 566, 568–69 (5th Cir. 1974) (holding that excluding military personnel from jury duty did not violate defendant's Sixth Amendment right to an impartial jury).

---

[4]      The evidence also supports the element that after stealing the vehicle he independently controlled it by keeping possession of it, even if for only a day. *State v. Para*, 120 Ariz. 26, 29–30 (App. 1978) (person who stole horses could not be guilty of receiving stolen property but could be found guilty of possessing or concealing stolen property if he committed further independent acts of concealment or possession).

## III.  Fundamental Error Review.

**¶19**		We have read and considered counsel's brief and have reviewed the record for reversible error.  *See Leon*, 104 Ariz. at 300.  Other than the classification error addressed above, we find none.  Hawthorne was present and represented by counsel at all stages of the proceedings against him.  The record reflects that the superior court afforded Hawthorne all his constitutional and statutory rights, and that the proceedings were conducted in accordance with the Arizona Rules of Criminal Procedure.  The court conducted appropriate pretrial hearings, and the evidence presented at trial and summarized above was sufficient to support the jury's verdicts.  Hawthorne's remaining sentence falls within the range prescribed by law.

### CONCLUSION

**¶20**		We affirm Hawthorne's convictions and his sentence for theft of means of transportation.  We reclassify Hawthorne's theft conviction as a class 4 felony and remand for resentencing.

**¶21**		Regarding the affirmed convictions and sentence, defense counsel's obligations pertaining to Hawthorne's representation in this appeal will end after informing Hawthorne of the outcome of this appeal and his future options, unless counsel's review reveals an issue appropriate for submission to the Arizona Supreme Court by petition for review.  *See State v. Shattuck*, 140 Ariz. 582, 584–85 (1984).  On the court's own motion, Hawthorne shall have 30 days from the date of this decision to proceed, if he desires, with a *pro se* motion for reconsideration or petition for review.



AMY M. WOOD • Clerk of the Court
FILED:  AA