OPINION AND ORDER
Opinion for the majority of the Court by
Associate Justice ROBERT N. CLINTON
joined by Associate Justice PAUL S. BERMAN.
[1] This matter is before the Court on the timely Notice of Appeal of Appellant/Respondent, J.P.[1] a minor child, from a final order of the Hopi Children’s Court issued August 1, 2008 in a juvenile proceeding finding the Respondent guilty of Homicide in violation of Hopi Tribal Ordinance 21 (“Ordinance 21”), Chapter III, Section 3.3.39. This Court possesses jurisdiction over this appeal pursuant to Ordinance 21, Chapter 1, Section 1.2.5. For the reasons set forth below, a majority of *333 this Court hereby reverses the Homicide conviction of the Appellant/Respondent and orders him discharged from all custody and supervision on these charges.
Factual Background
A. Procedure Below
[2] On December 2, 2009, J.P. was arrested at his home, the site of the alleged offense. He was formally charged with Homicide in violation of Ordinance 21, § 3.3.39 in a Juvenile Offender Petition filed with the Hopi Children’s Court on December 11, 2007. At his initial appearance the next day, he entered a plea of not guilty. The Appellant/Respondent filed a suppression motion to suppress all of his statements made to the police. That motion was denied.[2] The adjudicatory hearing in this matter was held over two days—May 15 and 19, 2008. At the close of the Tribes case and at the close of all evidence, the Defendant entered Motions for Directed Verdict of Acquittal on the charge of Homicide, both of which were denied by the Children’s Court. Thereafter the Court returned a verdict of guilty and ordered a pre-dispositional report. After receiving that report, the Children’s Court on August 1, 2008 sentenced J.P. to 365 days with credit for time served while awaiting disposition. The remaining balance was to be suspended with supervised probation until J.P. attained the age of twenty-one. The Children’s Court also extended its jurisdiction over J.P. until his twenty-first birthday.
[3] J.P. filed a timely Notice of Appeal. This Court received very helpful briefs from both the Appellant/Respondent and the Hopi Tribe and heard argument in the matter on December 11, 2009. The Court expresses its appreciation to counsel on both sides for their helpful arguments in this matter.
B. Factual Background
[4] The Homicide charge in question arises from events that took place at J.P.’s home in Shungopavi Village on December 2, 2007. It appears undisputed that on that day J.P. and his best friend, R.N., were in J.P.’s room plucking feathers from a hawk. The boys were playing around and at some point a rife was “pointed” at R.N. and the gun went off, apparently killing R.N.[3] This much of the events in question appears to be undisputed. The major question posed by these facts is whether R.N.’s tragic and unfortunate death was the result of a criminal act of Homicide by the Appellant/Respondent or, rather, the result of a tragic accident. The testimony at trial is determinative of whether the Tribe carried its burden of proof to demonstrate that R.N.’s unfortunate death was the result of an offense Homicide and not a tragic accident. Thus, the material testimony at trial must be briefly summarized based on the transcript of the proceedings.
[5] Officer Oscar Lalo[4] of the Hopi Police Department testified that he responded to a call to J.P.’s residence on December 2, 2007. When the Officer entered the residence he saw J.P. (“Juvenile”) and his mother. The officer asked what happened, and the Juvenile blurted *334 out that he just shot his best friend and that he did not mean to do it. Tr., page 9. The Juvenile immediately pointed to a rifle, stating that that was the gun, and he asked the Officer to take the gun away since the Juvenile never wanted to see the gun again. Tr., page 9. The Officer secured the gun in his patrol vehicle. In the rifle taken from the Juvenile’s home was a spent shell sticking out of the action. Tr., page 32.
[6] The Officer returned, and asked again what happened. The Juvenile stated that R.N. had come to visit that morning, that they were plucking a hawk that they had been shooting with the rifle previously, and the Juvenile stated that he pointed the rifle at R.N. and “the gun went off.” Tr., page 12. Later the Officer testified that the Juvenile stated that he was playing with the gun and it went off. Tr. page 30. There were no further questions asked, and the Juvenile was taken into custody. The Officer looked over the residence and proceeded to go to the Hopi Health Center. The Officer could see R.N. being worked on by the medical staff. Then the officer saw all the medical staff leave the room, and saw the doctor go speak with the family. Tr., page 15. The officer took photos of the victim. In the officer’s opinion, the victim was dead. Tr., pages 18-19. No other guns were found in the home. Tr., page 49.
[7] Officer Ami of the Hopi Police Department testified that he was the transport officer for the Juvenile. Tr., page 58. Before transporting the Juvenile to a detention facility, the Officer filled out the required paperwork, including the medical questionnaire. Tr., page 61. When the Juvenile was asked if he was depressed, he first answered no, then stated yes, “I just shot my best friend.” Tr., page 61. While getting ready for transport, the Juvenile again stated “I shot my best friend.” Tr., page 62. As the Juvenile was entering the transport vehicle, he was asked if he needed anything, the Juvenile stated no, “I just killed my best friend.” Tr. page 63.
[8] Major Phillip Taylor, a JROTC instructor, testified that the Juvenile was a cadet in the JROTC program at the Hopi High School. Tr., page 77. The Juvenile was on the marksmanship team that year and the preceding year. Tr., page 78. While in the program, the Juvenile was taught gun safety. Tr., pages 79-80. The Juvenile had passed an exam on gun safety. Tr. Pages 80-81.
[9] No direct evidence was presented of the medical cause of R.N.’s death, although the photographs of his body demonstrate a gunshot wound.
Issue Presented for Review
[10] The sole claim of error asserted by the Appellant/Respondent in this matter is whether the Hopi Children’s Court erred as a matter of law in denying his motion for a directed verdict at the close of all evidence. Thus, the question for this Court turns on whether the Tribe demonstrated each any every element of the crime of Homicide by evidence sufficient to survive a motion for a directed verdict.
Standard of Review
[11] The Due Process Clause of the Indian Civil Rights Act of 1968, 25 U.S.C. § 1302(8) requires that the Tribe demonstrate each element of any offense alleged in a juvenile proceeding beyond a reasonable doubt. In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). As this Court has held, “A ruling on a motion for a directed verdict is reviewed de novo ‘Because the test for granting or denying a motion for JNOV and a directed verdict is the same, the standard of review ought also to be the same; and a ruling on a motion for directed verdict is reviewed de novo’.” The *335 Hopi Tribe v. Q. T., 4 Am. Tribal Law 445 (2002) citing Shoen v. Shoen, 191 Ariz. 64, 952 P.2d 302, 303 (1997) (citing Gemstar. Ltd. v. Ernst & Young, 185 Ariz. 493, 917 P.2d 222, 234 (1996) and Del Monte Dunes at Monterey, Ltd. v. City of Monterey, 95 F.3d 1422, 1430 (9th Cir.1996)). This standard requires review denials of directed verdict motions de novo (i.e. reviewed anew based on the entire record without any deference to the decision or finding of trial court), applying the same standard that the trial is required to use. United States v. Rodriguez, 360 Fed.Appx. 743 (9th Cir.2009). In this case, therefore, this Court must determine “with the evidence viewed in the light most favorable to the government, “whether any rational trier of fact could have found, beyond a reasonable doubt, the requisite elements of the offense charged.’ ” United States v. Mendez-Casillas, 272 F.3d 1199, 1203 (9th Cir.2001); United States v. Burns, 597 F.2d 939, 941 (5th Cir.1979); see also, Jackson v. Virginia, 443 U.S. 307, 317 n. 10, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Arredondo, 155 Ariz. 314, 316, 746 P.2d 484, 486 (1987); Hyder v. Superior Court in and for Maricopa County, 128 Ariz. 216, 624 P.2d 1264, 1271 (1981). As these standards appear consistent with 25 U.S.C. § 1302(8) and In re Winship and neither party has suggested any different standard, these standards of review will be employed in this case.
Discussion
[12] The standard of review described above establishes the Tribe’s obligation to demonstrate each and every element of the offense alleged in a juvenile proceeding beyond a reasonable doubt. In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The Appellant/Respondent was accused of Homicide, which Ordinance 21, § 3.3.39 defines as follows:
HOMOCIDE[5] Any Indian who purposely, knowingly, recklessly, or negligently causes the death of another human being is guilty of an offense.
The Tribe did not claim either in the Children’s Court or before this Court that the Respondent/Appellant killed his best friend purposely, knowingly, or even recklessly and no evidence presented at the trial would support such a conclusion. Rather, before this Court the Tribe relies on the claim that the Appellant/Respondent negligently caused the death of his best friend. Appellee’s Response Brief, p. 4. Ordinance 21, § 3.1.1(b) defines negligently as “import[ing] a want of such attention to the nature or probable consequences of the act or omission as a prudent man ordinarily bestows in acting in his own concerns.”
[13] The statutory standard for negligence, by adopting “a prudent man” standard, immediately poses a difficult problem when applied to a juvenile in a Children’s Court proceeding. Juveniles are adjudicated by separate proceedings not applied to adults precisely because their level of maturity differs from that of adults. In particular, due to their level of development, juveniles often lack the full appreciation of adults regarding questions of causation and risks leading to injury— one of the reasons teenagers often dangerously regard themselves invulnerable. To apply “a prudent man” standard to a juvenile therefore risks imposing an adult standard on the juvenile that his or her level of development and maturity renders inappropriate and unattainable. For that reason, this Court understands and interprets the “prudent man” standard of section 3.1.1(b), when applied to a juvenile in a *336 Children’s Court proceeding, to refer to a prudent juvenile, not a prudent adult.
[14] Reviewing the evidence presented at trial based on these standards, this Court finds the evidence presented by the Tribe deficient with regard to two essential elements of the homicide offense: causation and negligence. With regard to each we conclude that the Tribe has not carried its burden of proving its case beyond a reasonable doubt and that no rational trier of fact could have found the defendant guilty of the offense charged.
A. Causation
[15] To prove the offense of Homicide under Ordinance 21, § 3.3.B9, the Tribe must present sufficient evidence that the accused “cause[d] the death of another human being.” (Emphasis supplied). For two reasons the Tribe failed to establish the required causation in this case. First, the Tribe failed to present any medical or other evidence clearly demonstrating that a gunshot wound constituted the actual cause of death of R.N. While the photographs of the deceased and the circumstances of the events might suggest that conclusion, the Tribe has an obligation to demonstrate the cause of death by evidence from which a rational tier of fact can find, not merely surmise, that element beyond a reasonable doubt. Nevertheless, had this failure been the only deficiency in the Tribe’s evidence the Tribe’s reliance on scant circumstantial evidence, though problematic, might not have required, standing alone, a grant of a motion for directed verdict of acquittal.
[16] Second, and more important, the Tribe also completely failed to introduce any evidence tending to show beyond a reasonable doubt that Respondent/Appellant was the moving causal force behind R.N.’s death. The entirety of the evidence presented on this question by the Tribe consisted of two different statements (one offered repeatedly) made by the Appellant/Respondent to various law enforcement officers. The first statement, made to Officer Lalo was that Appellant/Respondent pointed the rifle at R.N. and “the gun went off.” Tr., page 12. Later the Officer testified that the Juvenile stated again that he was playing with the gun and it went off. Tr. Page 30. The second statement, made multiple times to various law enforcement officials, was that he had shot (or killed) his best friend. Tr. Pages 12, 61, 62, 63. In his first version of this statement, made to Officer Lalo, Appellant/Respondent states that he had just shot his best friend and did not mean to do so. Tr. p. 12. The last portion of the statement was omitted from the later utterances ascribed to the Appellant/Respondent. Careful review of these statements, which, unlike the Children’s Court, this Court has the leisure to do by reviewing the transcripts or recordings of the proceedings, demonstrates that the Tribe presented absolutely no evidence that Appellant/Respondent had his finger or any other pressure on the trigger when the gun discharged. Two points about the evidence offered by the Tribe tend to equally suggest that the gun discharged on its own, perhaps as a result of some defect, rather than having been fired by the Appellant/Respondent. Rather consistently the Appellant/Respondent indicated that the gun simply “went off,” without ever claiming he pulled the trigger. Furthermore, in his initial statement to Officer Lalo, the Appellant/Respondent immediately insisted that the officer take the gun away since he never wanted to see it again, apparently blaming the gun for the incident. Since these statements are equally susceptible to the interpretation that a tragic accident—the accidental, unintended, and perhaps uninitiated, discharge of the weapon—killed the de *337 ceased, the burden was clearly on the Tribe to negate the possibility of tragic accident in order to show that Appellant/Respondent caused the death of the victim. The Tribe presented no forensic regarding the gun mechanism or other evidence negating the possibility of accident. The Tribe is also not helped in this regard by the repeated uncorroborated statements of the Appellant/Respondent that he shot (or killed) his best friend. Like the other statement made to Officer Lalo, this statement is equally susceptible to an interpretation that the Appellant/Respondent was holding a gun that accidentally discharged as it is to an interpretation that Appellant/Respondent pulled the trigger and therefore was the legal cause of the death of the victim. The Tribe simply offered no evidence beyond these two ambiguous statements to demonstrate that the Appellant/Respondent was the legal cause of the victim’s death. Presenting evidence that tends equally to demonstrate two alternative interpretations— tragic accident or homicide—-does not carry the Tribe’s burden of proof on the issue of causation. Accordingly, since the Tribe failed to carry its burden of proof of causation, the Children’s Court erred when it denied the motion for a directed verdict of acquittal made by the Appellant/Respondent at the end of all evidence.
B. Negligence
[17] In addition to the failure of the Tribe to satisfy its burden of proof to demonstrate causation, the Tribe also failed to prove negligence by the Appellant/Respondent by proof sufficient for a rational trier of fact to find negligence beyond a reasonable doubt. The Tribe’s theory of negligence appears to rely on the combination of two facts demonstrated by the record. First Tribe emphasizes that the Respondent/Appellant admitted pointing the gun at the deceased when it “went off.” Second, the Tribe presented evidence through the Appellant/Respondent’s ROTC instructor that Appellant/Respondent had taken and passed a gun safety course and was on the marksmanship team at the ROTC program of Hopi High School. This evidence fails to demonstrate negligence.
[18] First, the evidence adduced at trial totally fails to suggest, let alone prove, that Appellant/Respondent even knew or thought the weapon was loaded. This is significant because the act of pointing a weapon known (or perhaps thought) to be unloaded may not be negligent (even if it constitutes bad judgment and may be ill-advised). The Tribe’s theory was that the mere act of pointing the weapon, irrespective of whether it was thought to be loaded, was negligent as a matter of law. However, given juveniles’ psychological tendency to discount issues of causation and risk, this Court is unable to accept this legal conclusion when applied to a juvenile, who, like many children, may be fond of simulated gun play. Thus, the Tribe must prove more to establish negligence and failed to do so here.
[19] Second, the mere claim of pointing fails to clarify the act in question. Pointing a weapon may vary from deliberate aiming of the weapon to the moving of a weapon from one location to another with an arc of the movement of the barrel such that at one point in its arc of travel it was directed at the victim. Neither the statement of the Respondent/Appellant nor the evidence presented by the Tribe clarified which type of pointing was involved. The Hopi Police failed to question the suspect sufficiently to answer these questions, and the Tribe failed to produce any other evidence beyond the ROTC training of the Appellant/Respondent to suggest that Appellant/Respondent deliberately aimed a known, loaded weapon as part of his play *338 ing with his best friend. While the evidence presented by the Tribe suggests this scenario is one of several possible interpretations of the testimony presented, it certainly does not demonstrate that it is the more probable one, let alone one from which a reasonable trier of fact could find negligence beyond a reasonable doubt. For these reasons, as well, the Children’s Court erred when it denied the motion for a directed verdict of acquittal made by the Appellant/Respondent at the end of all evidence.
[20] In short, the evidence the Tribe presented in this case was equally susceptible to two alternative interpretations on both the essential elements of causation and negligence—tragic accident or homicide. The Tribe bore the burden of demonstrating each of these elements by evidence sufficient to permit a rational trier of fact to find the Appellant/Respondent guilty beyond a reasonable doubt. Given the plausible alternative interpretations of the Tribe’s evidence, the Tribe failed to carry its burden of proof. For this reason, the Children’s Court erred when it denied the motion for a directed verdict of acquittal made by the Appellant/Respondent at the end of all evidence.
[21] For these reasons the judgment of conviction of Homicide entered by the Hopi Children’s Court in this matter must be and hereby is REVERSED. The sentence entered by the Children’s Court in this matter therefore is hereby VACATED and the Appellant/Respondent is discharged from any continuing supervision.

. Pursuant to Ordinance 35, Section F{3) this Court is required to employ the initials, rather than the name, of the Juvenile charged with an offense. It has also chosen to do the same with respect to the victim of the offense in this case, who was also a juvenile. While it was not done in this case, this Court would encourage both the Tribal Prosecutor and any defense counsel or advocate to employ the same procedure although they are not expressly required to do so by Ordinance 35.

. Appellant/Respondent does not allege any error in this appeal arising from the denial of his motion to suppress his statements to the police.

. The Court notes that a gunshot wound was the apparent cause of death since no medical or other evidence was introduced by the Tribe purporting to demonstrate that the decedent died of the gunshot wound and not some other cause.

.Officer Lalo's name is consistently incorrectly spelled as Leylo in the transcript. Likewise, the first name of the deceased is consistently misspelled In the transcript.

. Quoted as it appears in Ordinance 21, with the misspelling of the title of the offense.